Shook *v.* Shook.

---

GEORGE SHOOK, executor &c. of Henry Snyder deceased, appellant, *vs.* AARON SHOOK and JOHN R. SHOOK, executors &c. of John Shook deceased, respondents.

A surviving executor and trustee has a right to the exclusive possession of the property of the estate. If he is insolvent, or his circumstances are otherwise such as to render it insecure, the remedy and relief are to be obtained by the *cestui que trust,* or some person interested in the estate of the deceased.

The application for security, or removal of the executor from office, cannot be made by the executors of a deceased co-executor.

If such an application is made by them, their petition should be dismissed

by the surrogate with costs to be paid by the petitioners personally. · It is erroneous to direct the costs of the proceedings to be paid out of the estate of the testator.

THIS was an appeal from an order or decree of the surrogate of the county of Dutchess.

*Hasbrouck, Sharp & Linderman,* for the appellants.

*John Rowley,* for the respondents.

*By the Court,* BROWN, J. The decree made by the surrogate of the county of Dutchess from which this appeal is taken, is illegal and unjust, for its principal end seems to have been to take the property of an unoffending woman, not a party to the proceeding, and who has had no connection with the litigation, and hand it over to the appellant, against his will, and to the two attorneys for the parties, as a compensation for their services and disbursements.

George Shook, the appellant, and John Shook, the respondent's testator, held the bond and mortgage of Evan Williams to secure $1500 with the interest, as executors &c. of Henry Snyder, and in trust for the support and maintenance of Elizabeth Stickle, the daughter of the testator. As long since as July, 1848, all the other affairs of the estate were closed and settled. In July, 1853, John Shook, one of the executors, died, and the respondents became his executors. He had the exclusive management of the property held in trust for Mrs. Stickle, and at his death the bond and mortgage was found by the respondents amongst his papers. George Shook, as surviving executor, demanded the possession of the bond and mortgage from the respondents, which they refused to deliver. The respondents thereupon commenced these proceedings by a petition representing the irresponsibility of George Shook, and praying that he be required to give security for the execution of his trust, or be superseded in his office as executor, and in the mean time be restrained from commencing any proceeding for the recovery of the bond and mortgage. No other relief was claimed.

Objection was taken, upon the return of the citation, that the surrogate had no jurisdiction, and the respondents no right to institute any such proceedings. The surrogate expressed a doubt of his power to interfere upon any ground stated in the petition, but concluded to retain the proceedings and make a decree " in order to protect the parties in some form or other." This is his own expression. He made a decree accordingly, in which he denied *in toto* the relief demanded in the petition ; for no sort of security is required from the appellant. He directed that the respondents pass over the bond and mortgage to the appellant upon his paying the following sums of money : $66.90 to the respondents ; to Virgil D. Bonesteel $33.52 for services as attorney for the appellant ; to John Rowley $45.78 for services as attorney for the respondents ; and to the appellant for his own expenses and disbursements, the further sum of $32. All these sums were to be paid, not by the persons who had set on foot a litigation which had failed, and for which there never was any reason, but were by the surviving executor to be taken from the property or money of Elizabeth Stickle, secured ·by the bond and mortgage. This is the exact measure of protection which the surrogate's decree throws around the property of an unoffending and absent person.

Nothing can be more clear, I think, than the right of the appellant, as surviving trustee, to the exclusive possession of the trust property. If he was insolvent, or his circumstances were otherwise such as to render· it insecure, the remedy and relief was to be obtained by the *cestui que trust*, and not upon the petition of a stranger. The relation which the respondents hold to this fund is that of strangers. Sections 18, 19, 20 and 21 of the act concerning letters testamentary, (2 *R. S.* 72,) empower the surrogate to require security from executors in precarious circumstances, and upon failure to comply with an order to that effect, to supersede the letters issued to them, respectively, and thereupon their rights and authority shall cease. But the application for such security or removal from office must be made by some person interested in the estate of the

deceased. Several executors and administrators are regarded in the light of an individual person. They have a joint and entire interest in the testator's effects, which is incapable of being divided. And in case of death such interest vests in the survivor. (3 *Bac. Abr. Ex'rs D. Toller's Law of Ex'rs,* 188.) The right which an executor of an executor, in however remote a series, had in the goods, chattels, &c. of the first testator at the common law, no longer exists. " No executor of an executor shall, as such, be authorized to administer on the estate of the first testator ; but on the death of the sole or surviving executor of any last will, letters of administration with the will annexed of the first testator, left unadministered, shall be issued in the manner and with the authority hereinafter provided." (2 *R. S.* 71, § 17.) An executor of an executor is not to interfere with the estate of the first testator, and letters with the will annexed are to issue—not when one of several is dead leaving a survivor—but when the sole or surviving executor is dead ; thus intending to give effect to the right of survivorship as it exists at the common law. The 11th section of the act in regard to suits by and against executors and administrators, (2.*R. S.* 448,) is equally expressive ; for it declares that " an executor of an executor shall have no authority to commence or maintain any action or proceeding relating to the estate, effects or rights of the testator of the first executor, or to take any charge or control thereof, as such executor." This language is significant and comprehensive, and is an effectual prohibition of actions as well as proceedings by an executor of an executor, the subjects of which relate to the estate, effects or rights of the testator of the first executor.

It seems to me, therefore, that the duty of the surrogate was plain. In place of awarding costs to Virgil D. Bonesteel and John Rowley, who were not parties to the proceeding, to be paid out of the money appropriated to the support of Mrs. Elizabeth Stickle, and in place of directing $66.90 to be paid to the respondents and $32 to the appellant from the same fund, his decree should have dismissed the petition and proceed-

ings, and charged the petitioners personally with the costs of the litigation.

The decree of the surrogate is reversed, with costs to be paid by the respondents *de bonis propriis.*

[ORANGE GENERAL TERM, April 3, 1855. *Brown, Dean* and *Rockwell,* Justices.]