JAMES D. McCABE, as Administrator, etc., Appellant, v. MOSES F. FOWLER et al., Executors, etc., Respondents.

An executor is not a guarantor of the safety of securities in his charge belonging to the estate; he is bound simply to exercise such prudence and diligence in the care and management of the estate as men of discretion and intelligence in general employ in their own like affairs.

N., in his life-time, left certain United States bonds in the hands of O. for safe keeping, who was at the time responsible, of good character and considered entirely trustworthy. N. died in 1865, leaving a will by which his widow was appointed executrix, and W., defendant's testator executor. The latter qualified, the former did not until after the death of W. The bonds were converted into other bonds which remained in the custody of O. until W. died in 1871. W. also left securities of his own

in the hands of O   After the death of W. the widow of N. qualified as executrix, but no letters testamentary were issued to her.   Her attorney took charge of the estate ; no call was made upon O. to deliver up the bonds: after his death, which occurred in 1875, it appeared that in 1874 he hypothecated the bonds as collateral for a loan made to a firm of which he was a member; said firm, including O., were insolvent.   In an action to charge the estate of W. with the amount of the bonds so lost to the estate of N., *held,* that there was no negligence or want of care and vigilance on the part of W. such as would authorize a recovery.

*Walton* v. *Walton* (1 Keyes, 18; 2 Abb. Pr. [N. S.] 428), distinguished.

(Argued February 4, 1881 ; decided March 1, 1881.)

Appeal from judgment of the General Term of the Supreme Court, in the second judicial department, affirming a judgment in favor of defendants, entered upon a decision of the court, on trial without a jury.

The nature of the action and the facts are set forth sufficiently in the opinion.

*I. T. Williams* for appellant.   Defendants' testator did not exercise that care, diligence, prudence and caution in the care, management and preservation of the bonds, which he was by law bound to exercise, and his executors are liable. ( *Walton* v. *Walton,* 2 Abb. [N. S.] 428 ; 1 Keyes, 15 ; *Montgomery* v. *Dunning,* 2 Bradf. 220 ; *Thompson* v. *Thompson,* 1 Bradf. 24 ; Redfield on Wills, 389 ; Bouv. Law Dict., art. Negligence ; *Powell* v. *Evens,* 5 Ves. 838 , *Caffrey* v. *Darby,* 6 id. 487 ; *Schultz* v. *Pulver,* 11 Wend. 361, 365 ; *Baskin* v. *Baskin,* 4 Lans. 90, 93, 94 ; Dayton on Surrogates, [3d ed.] 294–7, 519–520 ; *Brazier* v. *Clark,* 5 Pick. 94 ; 4 Barb. 626 ; *King* v. *Talbot,* 40 N. Y. 76 ; 14 Hun, 291 ; *Orcut* v. *Orcut,* 3 Paige, 459 ; *King* v. *King,* 3 Johns. Ch. 552.)   The bonds were personal property, chattels for which replevin would lie. ( *Bovet* v. *Masson,* 1 Den. 69.)   Fowler's liability attached at the time of his omission or neglect to have the bonds secured by Odell and remains till released, and his representatives must answer for it from his assets of his estate. ( *Walton* v. *Walton,* 2 Abb. [N. S.] 428 ; 1 Keyes, 15.)   Plaintiff having put in evidence his letters, issued by the surrogate of this county under seal of

office without objection, showed a *prima facie* right to bring the action, and if the defendants dispute this right the burden of proof is on them to impeach the letters, or otherwise to get rid of them. (*Broderick's Will*, 21 Wall. [U. S.] 503; 2 R. S. [ ed.], § 56, p. 82; 16 N. Y. 185; *Flur* v. *Chase*, 4 Den. 85, 90; *Dale* v. *Roosevelt*, 8 Cow. 333, 348–9; Willard on Ex'rs, 145–6; Phillips on Ev. no. 620, p. 864; no. 769, p. 1120; 6 Cow. 494; *Parham* v. *Moran*, 4 Hun, 718–19; *Belden* v. *Meeker*, 47 N. Y. 307–10; *Farley* v. *McConnell*, 7 Lans. 428–31; 52 N. Y. 630.) .

*Calvin Frost* for respondents. Defendants' testator cannot be charged with less care and prudence in his representative than in his individual character, because he exercised the same care and prudence in the management of the Fish estate as in the management of his own property. (Redfield's Law & Practice, Surrogates Court, 520; Dayton on Surrogates, [3d ed.] 522–23.) Defendants could not be charged with the loss of the bonds several years after Mr. Fowler's death, they never having had any authority to take them, or interfere with them. (*Shook* v. *Shook*, 19 Barb. 656; 3 R. S. [6th ed.], § 11, p. 733.) As sole surviving executrix Mrs. Fish was entitled to the exclusive possession of the property. (*Shook* v. *Shook*, 19 Barb. 653; 3 R. S. [6th ed.] § 18, p. 74.) As such executrix she derived her power and authority not from letters testamentary, but from the will. (*Hastnett et al.* v. *Wandell*, 60 N. Y. 349, 350.)

MILLER, J. The plaintiff in this action seeks relief against the estate of William Fowler, deceased, for the negligence of the testator as an executor of the estate of Nathaniel Fish, deceased, in failing to collect certain government bonds belonging to said Fish's estate. These bonds were left and deposited for safe keeping by Fish in his life-time with one Odell, his nephew, who purchased the bonds for Fish and was at the time a man of responsibility, good character and business habits, and considered entirely trustworthy. Upon the death of Fish in 1865, Fowler qualified as executor of his will and assumed to act in

that capacity. His widow, who was executrix, did not qualify or renounce during the life of Fowler, and the bonds deposited were converted in 1867 into five-twenty bonds, which remained in the hands of Odell, he transmitting the interest to Fowler, as he had previously done, until Fowler died in October, 1871, leaving a will. His executors called upon the surrogate for advice, and upon being informed that Mrs. Sarah Fish, the widow and surviving executrix named in the will of her husband, should qualify, according to the findings of the judge, an oath as executrix was prepared, and she being indisposed at the time, was sent to her residence, and she subscribed and swore to the same on the 18th of January, 1872, before a notary, which oath was filed in the office of the surrogate and a memorandum of the same entered in the blank book of oaths, where it should have appeared if it had been taken in the office. The letters testamentary were not issued to Mrs. Fish, but she acted as executrix and executed a power of attorney to one John B. Fowler, who took charge of the estate, collected and paid over the interest to her, she being under the will entitled to the income during her life, until Odell's death in 1875, and as residuary legatee to one-half of the principal. It then appeared that in 1874 the bonds were hypothecated by Odell as collateral security for a loan made by the firm of which he was a member, and the firm, including Odell, turning out to be irresponsible, the bonds were lost to the estate of Fish.

It will be observed that up to the time of the decease of William Fowler, so far as the evidence shows, there was no reason to suppose that the bonds in question were unsafe, or in any peril of being lost, while in the possession of Odell. Nor do we think that there is any valid ground for claiming that Fowler was negligent, or failed to bestow upon the property committed to his charge that degree of care, attention and vigilance which was essential for its safety and preservation, and which he was bound to exercise as a lawful custodian of the same. He had acted the same as the testator, Mr. Fish, had done in leaving them with Odell, and as the proof shows, he had also left with Odell his own securities of a like nature.

An executor or trustee is not a guarantor for the safety of the securities which are committed to his charge, and does not warrant such safety under any and all circumstances, and against all contingencies, accidents or misfortunes. The true rule which should govern his conduct is, that he is bound to employ such prudence and such diligence in the care and management of the estate or property as in general prudent men of discretion and intelligence employ in their own like affairs. (*King* v. *Talbot*, 40 N. Y. 76.) While this rule requires an executor or trustee to avoid all extraordinary risks in the investment of the moneys of the estate and to keep the same safely, it does not demand that he shall be made liable for contingencies which, under ordinary circumstances, could not have been anticipated. There is nothing in the record before us which evinces that the bonds in question were liable to be lost in Odell's custody, and, as the case stands, that they were not entirely safe up to the period of the death of William Fowler. At this time they had not in any way been misapplied or improperly used, and there is no ground for claiming that Odell was an improper person as a depositary of the bonds. Both Fish and Fowler had no reason to believe to the contrary, and Fowler, as executor, was only following the course pursued by Fish in leaving the bonds where he found them. He did the same with his own bonds, thus evincing his confidence in Odell and his entire good faith. It does not excuse him if negligent because Fish had acted in like manner; but in view of the circumstances it cannot, we think, be said that he did not act as a person of ordinary prudence and care would have done in regard to his own affairs, or that he was negligent. If Fowler, the executor of Fish, for any reason had cause for suspicion or doubt as to Odell's integrity or financial ability to respond for any loss or misappropriation, or if it had appeared that Fowler knew that Odell was in failing circumstances, a different question would arise, and it might well be urged that he had conducted himself without that caution and care which his duty as trustee demanded; but the facts presented lead to the conclusion that there was no just ground for apprehension of loss

in consequence of Odell's delinquency or want of responsibility during Fowler's life, and there is no reason to doubt that the bonds were in existence and entirely safe and secure up to the period of Fowler's death and for some years subsequent thereto. Such being the state of the case, the proof should be very clear showing neglect on the part of Fowler while he was alive, to hold his estate chargeable for the loss which occurred after his decease. His executors had no control over the bonds, no authority to interfere with the estate of Fish, and no right to the custody of or to receive or take charge of the bonds in any form. (2 R. S. 448, § 11; *Shook* v. *Shook*, 19 Barb. 653. By Fowler's death they had passed from him as executor into the hands of Mrs. Fish, the surviving executrix or trustee, or to such person who might be appointed by the surrogate to administer upon the estate. The court found that Mrs. Fish qualified as executrix, and there is, we think, sufficient evidence to support this finding. And although no letters testamentary were issued to her, she assumed to act and took charge of the property belonging to the estate of her husband. That letters were not issued can make no difference so long as she was entitled to the same. She had authority as executrix and as a trustee under the will of her husband to take charge of the property belonging to the estate, and the subsequent issue of letters of administration to the plaintiff did not, if she was qualified, supersede her acts or in any way interfere with her rights. The subsequent appointment of the plaintiff is not important if Mrs. Fish duly qualified and acted as executrix, and cannot affect her acts so far as they relate to taking charge of the bonds in controversy. Nor does any question of estoppel, as to the right of the defendants to set up as a defense that Mrs. Fish was an executrix and acted as such, arise on this appeal.

Assuming, however, that Mrs. Fish was not authorized to act as surviving executrix under her husband's will, then it was the right of those who were interested in the estate to obtain letters of administration with the will annexed. (2 R. S., 71, § 17.) If this had been done, the bonds could have been obtained at once and no loss would have occurred. As Mrs.

Fish, while enjoying the income and having the control over the bonds, did not assert her right to the custody of the same, or if she had no right, the appointment of an administrator with the will annexed was not applied for or made for a long time, the loss was not caused by the neglect of Fowler as executor of Fish, but by the failure of the parties in interest to avail themselves of the right, they had to take and secure the bonds. The negligence was with them and the loss was occasioned by their fault, as they had it in their own power to protect themselves.

The case of *Walton* v. *Walton* (1 Keyes, 18 ; 2 Abb. Pr. [N. S.] 428), cited by the appellant's counsel, differs essentially from the case at bar. The action was brought by an administrator to compel the executors of the deceased executor of the estate which the plaintiff represented to account for assets unadministered in his hands, but there was no surviving executor into whose hands the property had been delivered, and the defendant's testator had in his possession the property of the estate unaccounted for at the time of his death. Besides there was no question involved as to the negligence of the executor, or as to the right of the parties in interest to administer upon the estate.

There is, we think, no valid ground for claiming that the bonds inventoried never came into the hands of Odell, and the bonds hypothecated by Odell and sold for the payment of the loan were not those referred to in the inventory and lost to the estate. The findings of the court are in a contrary direction and are sustained by sufficient evidence.

A number of questions were raised upon the trial in regard to the admission of evidence, but none of the rulings of the judge in reference to the same show any such error as demands a reversal of the judgment.

The question made as to giving costs against the estate of Nathaniel Fish, related to the discretion of the judge and is not the subject of review upon this appeal.

The judgment should be affirmed.

All concur. Folger, Ch. J. and Earl, J., concurring in result.

Judgment affirmed.