MARGARET J. WILMERDING, Appellant, *v.* JOHN McKESSON et al., Respondents.

103  329
111  538
103  329
113  558
103  329
115   21
103  329
124  431
103  329
131  420
103  329
157  268

An executor is not exonerated from the duty of vigilance in protecting funds belonging to the estate simply by the fact that they were paid to or came into the hands of a co-executor in due course of ·administration.

While, if he is merely passive, and does not obstruct the collection or receipt of assets by his associate, he is not liable for the latter's waste; where he knows and assents to a mis-application, or negligently suffers his co-executor to receive and waste the estate, when he has the means of preventing it, he becomes liable for a resulting loss.

The will of W. created certain trusts; among others, one for the benefit of plaintiff. The portion of the trust fund, held for plaintiff's benefit, was directed to be separately invested, and the net income applied to her use during life. At the time of his death, W. was a member of the firm of W. & M. The surviving members of the firm, one of whom was the defendant G., an executor and trustee under the will, continued the business. He retained in his possession the books of account, papers and securities belonging to the estate. Moneys realized from the estate in the course of administration were, under the authority of G., paid to the new firm, and were, with the knowledge of defendant McK., a co-executor and trustee, used in its business, the firm paying interest, which was credited in the account-books of the estate. No portion of the estate was set apart as plaintiff's share. The firm failed, and the funds of the estate in its hands were lost. In an action to charge said trustees with the loss, *held*, that McK. was liable for allowing the fund to accumulate in the hands of the firm without requiring the same to be invested as directed by the will; also, that if he had not actual knowledge of the fact that the firm was using the funds, as he could have ascertained the fact by making inquiries as to what use was being made thereof, he was chargeable with negligence in failing so to do; that he should at least have sought to have them properly invested.

G., without the knowledge of McK., hypothecated securities belonging to the estate to secure loans for his own benefit or for that of the firm. *Held*, that McK. was not liable for the loss; that the failure to make a separation of the securities, as contemplated by the will, did not render him liable, as this did not induce or cause the spoliation, nor would such a separation have prevented it.

McK. was charged with interest on the losses, computed with annual rests. *Held*, that, as there was no wrongful intent on his part, this was error; and that simple interest, at five per cent, was a proper charge.

(Argued June 2, 1886; decided October 12, 1886.)

CROSS-APPEALS from judgment of General Term of the Supreme Court, in the first judicial department, entered upon an order made October 27, 1882, which modified, and affirmed as modified, a judgment in favor of plaintiff, entered upon a decision of the court on trial at Special Term.

The nature of the action and the material facts are stated in the opinion.

*S. P. Nash* for plaintiff. The defendant McKesson was negligent in taking part in the discharge of securities which were being paid off and allowing the funds to accumulate in the hands, not simply of a co-executor or co-guardian, but of a business firm of which the co-executor was a member. (*Clough* v. *Bond*, 3 Myl. & Cr. 490.) The defendant McKesson was inexcusable for delegating the management and control of the moneys of the estate, to the extent that he did, to George G. Wilmerding. (*Monell* v. *Monell*, 5 Johns. Ch. 283, 293–296 ; *Clark* v. *Clark*, 8 Paige, 152 ; *Spencer* v. *Spencer*, 11 id. 299, 305, 306 ; *Brice* v. *Stokes*, 11 Ves. 319 ; *Egbert* v. *Butler*, 21 Beav. 560 ; *Styles* v. *Guy*, 1 MacN. & G. 422 ; *Pugh* v. *Partridge*, 32 Beav. 661 ; *Candler* v. *Tillett*, 22 id. 423 ; *Topliss* v. *Harrell*, 19 id. 423 ; *Cowell* v. *Gatcombe*, 27 id. 568 ; *Thompson* v. *Finch*, 22 Beav. 316 ; affirmed 8 De G., M. & G. 560 ; *Walker* v. *Symonds*, 3 Swanst. 74 ; *Mendes* v. *Guedalla*, 2 Johns. & Hem. 259 ; *Lewis* v. *Nobbs*, L. R., 8 Ch. Div. 591 ; *Croft* v. *Williams*, 88 N. Y. 384 ; *Ormiston* v. *Olcott*, 84 id. 339; *Bates* v. *Underhill*, 3 Redf. 365 ; *Monell* v. *Monell*, 5 Johns. Ch. 283 ; *Clark* v. *Clark*, 8 Paige, 153 ; *Spencer* v. *Spencer*, 11 id. 299, 305, 803 ; *Adair* v. *Brimmer*, 74 N. Y. 561 ; 95 id. 35 ; *McCabe* v. *Fowler*, 34 id. 314 ; *Glacius* v. *Fogel*, 93 id. 434 ; *Earle* v. *Earle*, id. 104.) Defendant was chargeable with notice of the contents of the books kept by the accountant of the estate. (*Allen* v. *Coit*, 6 Hill, 328 ; *Adair* v. *Brimmer*, 74 N. Y. 539, 564 ; *Ward* v. *Warren*, 82 id. 265.) The failure to follow the explicit direction of the will, to set apart and keep separately invested the several sums appropriated for testator's daughters, and to declare the same

by a proper instrument in writing, was a neglect of duty which of itself was sufficient to make the defendant liable in this case. (2 Wms. on Ex'rs [7th Eng. ed.], 1796.) As between *cestui que trust* and trustee, in the case of a direct trust, no length of time is a bar. (Lewin on Trusts, 733 ; Perry on Trusts, § 863.)

*William Allen Butler* for defendant. The possession and custody by George G. Wilderming of the securities · of the estate, from the date of the testator's death up to the discovery of his breach of trust, were lawful and proper, and could not be interfered with by the defendant McKesson. (*Langford* v. *Gascoigne,* 11 Ves. 333 ; *Edmunds* v. *Crenshaw,* 14 Pet. 166–168 ; *Williams* v. *Nixon,* 2 Beav. 472 ; *McKim* v. *Aulback,* 130 Mass. 481 ; *Craft* v. *Williams,* 88 N. Y. 384 ; *Burt* v. *Burt,* 41 id. 46.) The surviving partners of the testator's firm were at his death lawfully in possession of the entire copartnership property and entitled to retain the same in their control and to liquidate the affairs of the firm, accounting to the personal representatives of the deceased partner for his share as ascertained. (Collyer on Part., § 129 ; *Case* v. *Abeel,* 1 Paige, 393.) The want of a declared separation by sealed instruments did not in any manner occasion or induce the spoliation of the estate by the defaulting executor ; nor would the existence of such instruments have prevented it. (*Craft* v. *Williams,* 88 N. Y. 384 ; 2 Addison on Torts, 1004 [D. & B. ed.] ; *Hubbard* v. *Briggs,* 31 N. Y. 518 ; *Chester* v. *Comstock,* 40 id. 575, note.) The defendant McKesson was in no way liable for any part of the deficiency caused by the wrongful misappropriation and abstraction of the moneys and securities of the estate by George G. Wilmerding without his knowledge, and the court below properly so held. (Wms. on Exrs. [6th Am. ed. 1877] 1820 ; Story's Eq. Jur., §§ 1280, 1283 ; Hill on Trustees, 309, and note, p. 470 [4th Am. ed.] ; *Monell* v. *Monell,* 5 Johns. Ch. 283 ; *Townley* v. *Sherborne,* Cro. Car. 312 ; White & Tudor's Lead. Cas. in Eq., 2 Hare & Wallace's Notes, 623 ; *Leigh* v. *Barry,* 3 Atk. 584 ; *Williams* v. *Nixon,* 2 Beav. 472 ; *Sutherland* v. *Brush,* 7 Johns. Ch. 17 ; *Styles* v. *Guy,* 1 MacN. & G. 422 ; *Karby*

v. *Turner*, Hopk. 352; *Sherman* v. *Parish*, 53 N. Y. 483; *Banks* v. *Wilkes*, 3 Sandf. Ch. 108; *Monahan* v. *Gibbons*, 18 Johns. 427; *Adair* v. *Brinmer*, 74 N. Y. 539, 566; *Ormiston* v. *Olcott*, 84 id. 339; *McCabe* v. *Fowler*, id. 314; *Earl* v. *Earl*, 93 id. 104; *Clark* v. *Clark*, 8 Paige, 153.) Even where the executor or trustee has himself joined in the collection and receipt of the trust moneys, he is not chargeable for their wrongful misapplication by his co-trustee in the absence of circumstances to bring home to him knowledge or notice of the breach of trust. (*McKim* v. *Aulbach*, 13 Mass. 481; *Edwards* v. *Crenshaw*, 14 Pet. 166; *Craft* v. *Williams*, 88 N. Y. 384; *Kip* v. *Dennison*, 4 Johns. 25; *Monell* v. *Monell*, 5 Johns. Ch. 296.) A trustee is liable only for his own acts and defaults, and not for those of his co-trustee, or for funds collected by his co-trustee. (93 N. Y. 111; *Adair* v. *Brimmer*, 74 id. 539; *Lewis* v. *Noble*, L. R., 8 Ch. Div. 591; *Monell* v. *Monell*, 5 Johns. Ch. 182; *Topler* v. *Harwell*, 19 Beav. 423; *Cowell* v. *Gatcombe*, 27 id. 568; *Jones' Appeal*, 8 W. & S. 143; *Worth* v. *McAden*, 1 Dev. & Bat. Eq. 199; *Miller* v. *Proctor*, 20 Ohio St. 442; *Banks* v. *Wilkes*, 3 Sandf. Ch. 99; *Stowe* v. *Bowen*, 99 Mass. 194.)

MILLER, J. This action was instituted by the plaintiff against the defendants for the purpose of making them liable as executors and trustees of the estate of William E. Wilmerding, deceased, who was the father of plaintiff, and as guardians of his minor children, upon rendering an account of their proceedings, for an alleged loss incurred to the plaintiff's interest in said estate.

Two other persons were named as executors and trustees in the will in addition to the defendants, one of whom is dead and the other has taken no part in the administration of the estate.

At the time of the testator's death he was the senior member of the auction-house of Wilmerding & Mount, an old established firm of high credit and repute, and a considerable portion of his estate was the interest which he had in this

firm, which interest was valued upon the inventory of the executors at $140,909.14.

The survivors of the firm, after the testator's death, consisting of his three sons and William S. Mount, continued the business under the same firm name. The new firm failed in 1874 and there was a loss to the estate by reason thereof of about $150,000, which was entirely attributable to the fact that the trust moneys were allowed to be intermingled with the moneys of the firm and used in its business and thus exposed to its hazards, and also to the fact that the securities of the estate were left under the individual control of the defendant, George G. Wilmerding, one of the executors and trustees, who was a half brother of the plaintiff, and were appropriated by him for the benefit of the firm of Wilmerding & Mount, of which he was a member.

The plaintiff, at the time of the death of the testator, was twelve years old. The complaint alleged that the interest of the plaintiff in her father's estate was, First, one equal undivided third part of the separate estate of plaintiff's deceased mother in her father's possession. Second, a legacy, under her father's will, of $10,000 to be invested by the trustees in the same manner as her share of the residuary estate. Third, a life interest in the income of one-thirteenth part of the residuary estate of her father, which, together with the legacy of $10,000 aforesaid, was to be kept invested by the trustees for her benefit and the income paid to her for life.

Plaintiff's right to maintain this action is based upon the ground that her interest was not kept separately invested so as to be distinguishable, and that the funds of the estate were permitted to be used by the firm of Wilmerding & Mount.

The proof upon the trial established, and the judge found that during the entire administration of the estate until the failure of Wilmerding & Mount, the executor, George G. Wilmerding, had the custody and control of the securities belonging to the estate; that he had two tin boxes, in one of which he kept the bonds, mortgages, stocks and other securi-

ties, and in the other, the account books and vouchers for pay-
ments, which boxes were kept in the safe of the firm, and the
defendant McKesson had no access to the boxes or the safe
in which they were kept; that he never saw them except when
they were occasionally produced by the defendant Wilmerding
at the office of the accountant; that he never examined them,
having full faith and confidence in the integrity and fidelity of
his co-executor, Wilmerding.

Moneys which were realized from the estate in the course of
administration were paid to the firm of Wilmerding & Mount
under the authority of the executor, George G. Wilmerding,
and the evidence shows that these moneys were used from time
to time, while they remained in the possession of the firm, in
the transaction of its business, and that the firm paid interest
on said moneys, which was credited from time to time on the
account books of the estate. This continued down to and
including the time of the failure of the firm.

The loss to the estate clearly arose from the unlawful act of
George in intermingling its funds with those of the business in
which he was engaged, and no question is raised as to his lia-
bility. The trial court also found that the defendant McKes-
son had knowledge at the time he filed his accounts as executor,
and afterward down to the time of the failure of the firm of
Wilmerding & Mount, that the moneys of the estate were from
time to time received by said firm as depositaries or bankers;
that cash balances accumulated in their hands and were left
with them, on which they allowed interest; that he could at all
times, by inspecting the books kept by the accountant of the
estate, have ascertained the particulars in respect to such bal-
ances, and that he was negligent in not keeping himself
informed of the contents of said books and in allowing the said
balances so to remain with said firm; that he was also guilty of
negligence, as executor and guardian, in allowing the moneys
of the estate to accumulate in the hands of his co-executor and
co-guardian, George G. Wilmerding, after the 1st of January,
1870, as securities were paid off, in the discharge of which he
took part. The court further found that after the failure of

Wilmerding & Mount the total loss to the estate of the testator, as shown by the indebtedness of said firm to the guardians and to the executors' accounts and to the special funds, was, by the direction of the defendant McKesson, ascertained and apportioned ratably upon the interests of the several beneficiaries which were still in the hands of the defendants, as executors and guardians, and the amount so charged against the plaintiff was, in respect to the property she is entitled to absolutely, $16,177.25, and in respect to the property in which she has an interest for life, $22,686.20, as of the 31st day of December, 1874. It was also found that the account between the guardians and trustees and the plaintiff, brought down to October 15, 1880, stood as follows: Amount of principal of life estate on hand December 31, 1879, $14,289.19 ; amount of loss admitted on said life estate, $22,686.20, making a total of $36,975.39. Also, that the amount on hand of the account current was, on January 1, 1880, $6,303.56 ; amount of loss admitted under term "contingent," $16,177.25 ; interest on $38,863.45, on aggregate of losses from January 1, 1875, to January 1, 1880, $12,653.94 ; payments since January 1, 1880, deducted, $964.64 ; interest from January 1, 1880, to October 15, 1880, on $71,145.50, $2,816.67, making a total of $36,986.78, and judgment was rendered in favor of the plaintiff for the sum of $36,986.78, with interest thereon from October 15, 1880, due to her absolutely, and for the sum of $36,975.39, with interest thereon from October 15, 1880, due from defendants in respect to the life estate, and that the last-mentioned sum be paid over to a trustee to be appointed in the place of the defendant.

This judgment was modified by the General Term by reducing the first-named sum of $36,986.78 to $11,300.26, and the last-named amount of $36,975.39 to $17,033.34. The decision of the General Term exempted the defendant McKesson from all the loss of $16,177.25, except $1,915.82, with which it charged him, and from all the loss of $22,686.20, except $2,-744.65, with which it charged him.

The sum of $17,315.12 was the amount due the estate from Wilmerding & Mount, December 31, 1871, as appears from the

findings, which also show that there was due December 31, 1872, from the firm to the estate, $102,176.95, and on December 31, 1873, $111,992.01.   The opinion of the General Term holds that the evidence justifies the finding that the defendant McKesson was liable for the balance due the estate at the close of the year 1871, but that he was not chargeable with the increase of the balance due the estate as shown in 1872 and 1873, which was owing to the receipt by the firm of the proceeds of investments paid off, which at once went into their business, as well as to the misappropriation made by George G. Wilmerding during that period.   The deposits with the firm of moneys received included moneys realized in the due course of administration of the estate.   While the use and conversion of the securities was a dishonest and unlawful misappropriation of the funds which constituted a *devastavit* upon the estate committed by the defendant Wilmerding, the liability of the defendant McKesson, for the loss incurred by the estate, rests upon the ground that he failed to perform his duty, as an executor and guardian, in not taking charge of and protecting the interests intrusted to his keeping, and that the loss was occasioned by reason of his negligence and want of care.

The trial court found that he was chargeable with negligence in allowing the money to accumulate after January 1, 1870, as securities were paid off, in the discharge of which he took part. The evidence shows that there was no bank account kept by the executors jointly, which would require the signatures of both executors to draw upon it, but only a bank account in the name of George G. Wilmerding, as executor, and this was discontinued in 1864, as inconvenient.   If this precaution had been observed, no money could have been drawn belonging to the estate without McKesson's direct authority.   He had knowledge or means of knowing that the moneys which were paid to George G. Wilmerding, and were awaiting investment, were used in the business of the firm of Wilmerding & Mount.   When he rendered his account as executor, the account showed that the firm were allowing the estate interest on moneys in their hands, paying about $3,000 a year, which indicated that large sums

were there belonging to the estate.    After December 31, 1868, it appears that no new investments were made, and for six years afterward money paid on securities which became due accumulated in the hands of the firm.

As we have seen, in 1872 over $100,000 was due the estate as the books of account showed, and in 1873 over $111,000. McKesson had access to the books and could easily have ascertained what the amounts were in the hands of George or the firm of Wilmerding & Mount.    He could have learned from the books, if from no other source, that this firm was using the moneys of the estate and paying interest thereon.    His own evidence shows that when speaking to George on the subject of the accumulation of money about the time when $64,000 was paid in on the asylum bonds and $12,000 on a bond and mortgage, and other large sums were on hand, as appeared by the account for the year 1872, he was informed that it would be needed to pay off "the boys."    This hardly furnished sufficient excuse for failing to see that the moneys of the estate were properly and safely invested.    At this time it may be remarked "the boys" had been settled with, and afterward large sums were paid in, which constituted the basis of the heaviest defalcation of George.    His duty was to see that these large sums which were paid in were drawing interest from investments safely made, and if he had been vigilant in making inquiry he could not but have learned, if he did not know before, that the firm was using and allowing interest on moneys belonging to the estate.    His neglect to make inquiry is evidence that he was negligent in looking after the interest intrusted to him.    It is true that the moneys which remained uninvested did not come into his hands, and perhaps it may be said that he had not the control over the same he would have had if they had been paid directly to him, but that fact did not excuse him from the use of ordinary care in protecting the funds from loss, and he must have known or he could have known, if he did not, that the funds had been diverted from the usual course of investments by being used in the business of the firm of Wilmerding & Mount, and he should, at least,

have sought to have the same invested or to remonstrate with his co-executor against the use to which they had been appropriated. Except as already stated, the proof does not show that he insisted investments should be made, or took any measures with the view of procuring the same. The question whether he should have resorted to legal measures for the purpose of taking the funds out of the hands of his associate, under the circumstances, does not distinctly arise, as it is not apparent that he affirmatively insisted upon a different disposition of the same, and it appears by his conduct that he acquiesced in their remaining in the condition in which they had been.

Although McKesson testified that before the failure of Wilmerding & Mount he never knew of the use by George G. Wilmerding, or his firm, of any moneys or funds of the estate, yet there is strong evidence to establish the fact that he must have known it, as the court substantially found, and if he did not, upon inquiry he could have ascertained it, and in failing to do so he was chargeable with carelessness and a neglect of a plain duty.

Cases may arise where one executor is responsible for the acts of his co-executor in the management of funds which have come into his hands, but where the funds of the estate were lawfully received by one of the executors, or were originally in his hands, or properly paid to him in the due course of administration, and there is nothing to excite suspicion as to the integrity or responsibility of such trustee, or to create a belief that the funds have been improperly used or invested in violation of the established rules applicable to such cases, or were unlawfully allowed to remain uninvested, there is no rule which charges the executor or trustee who has not control of the fund, with the wrongful acts or misconduct of his associate. If, however, the circumstances are such as to create a doubt in respect to the safety of the funds, a co-executor is not exonerated from the duty of vigilance in protecting them. If the executor is merely passive, and simply does not obstruct the collection or receipt of assets by his associate, he is not liable for the latter's waste ; but where he knows and assents to such misapplication,

or negligently suffers his co-executor to receive and waste the estate when he has the means of preventing it by proper care, he becomes liable for a resulting loss. (*Croft* v. *Williams*, 88 N. Y. 384.) McKesson did not occupy the position of a passive trustee, merely joining in receipts, etc., for conformity. He was active to a considerable extent as to matters connected with the trust, advised as to investments, passed his accounts as executor and received his lawful commissions, consulted counsel, united in employing an accountant, he did every thing that was required by the position he occupied except that he neglected to protect the estate from the hazards of the business of Wilmerding & Mount. His duty demanded that he should see that the moneys of the estate did not lie idle, and that they should be protected from loss. For his neglect in not attending to this duty he was clearly liable except for the deficiency caused by the wrongful taking and conversion of the securities of the estate by George G. Wilmerding without his knowledge or consent. This was a breach of trust committed, after the plaintiff became of age in 1872, by George by the abstraction of securities in his possession, and the hypothecation of the same for moneys loaned to himself or his firm. His fraudulent acts in this respect constituted a spoliation and waste of the funds of the estate for which McKesson was not responsible. The estate had been lawfully invested and the loss was caused by the wrongful and fraudulent acts of George G. Wilmerding without the knowledge of McKesson and with nothing to excite his suspicion that his co-trustee would be guilty of thus misappropriating and wasting the funds of the estate. In such a case a co-trustee is not responsible for the acts of his associate. An executor or trustee is not a guarantor for the safety of the securities which are committed to his charge, and does not warrant such safety under any and all circumstances and against all contingencies, accidents or misfortunes. (*McCabe* v. *Fowler*, 84 N. Y. 314.) The general rule as to the liability of one executor or trustee for the acts of his co-executor or trustee is laid down in Williams on Executors (6th Am. ed., 1820), 9, as follows: "A *devastavit* by one of two executors shall not

charge his companion provided he has not intentionally or otherwise contributed to it, for the testator having misplaced his confidence in one, shall not operate to the prejudice of the other."

For the *devastavit* of a co-executor or trustee an executor or trustee is not liable unless it appears that he had knowledge, or assented to the acts done, or had notice which should excite his suspicion and put him on inquiry. This rule is fully sustained by the authorities. (*Sutherland* v. *Brush*, 7 Johns. Ch. 17; *Sherman* v. *Parish*, 53 N. Y. 483; *Adair* v. *Brimmer*, 74 id. 539; *Peter* v. *Beverly*, 10 Pet. 532; *Ormiston* v. *Olcott*, 84 N. Y. 339; *McCabe* v. *Fowler*, id. 314; *McKim* v. *Aulbach*, 130 Mass. 481; *Croft* v. *Williams*, 88 N. Y. 384.)

None of the cases cited by the plaintiff's counsel are in conflict with the views laid down, and we are unable to find any ground upon which McKesson can be held liable for the fraud and misconduct of his co-trustee in reference to the securities which were unlawfully abstracted by the latter. George G. Wilmerding being lawfully in possession of the securities and having sole custody and charge of the same, and there being no ground for interference with his right to hold them, no reason exists why McKesson should be held liable for the wrongful acts of his co-trustee. McKesson was not chargeable with connivance or culpable negligence, and none of the decisions, as we have seen, sustain the rule that, under the facts presented, he should be held to the most strict and rigid accountability. The amounts appropriated by George G. Wilmerding, consisting of $36,574 in government bonds, and $7,625 in Erie railroad bonds, were improperly allowed against McKesson by the judge at Special Term. In this respect the judgment was erroneous and should be corrected by the deduction of the several items mentioned.

The failure of the defendants to make a separation of the securities, as contemplated by the will, did not induce or cause the spoliation of the estate by George G. Wilmerding, nor would it have been prevented if such separation had been made. There must be a conjunction of wrong and loss to sus-

tain a liability upon any such ground (*Croft* v. *Williams*, 88 N. Y. 384), and as this does not appear, the appellant's claim cannot be upheld.

The statute of limitations was no defense to the plaintiff's claim.

The judge in his findings has allowed interest on losses computed from January 1, 1875, to January 1, 1880, with annual rests, at six per cent till January 1, 1879, and five per cent thereafter. We think that this is not a case where annual rests should be made, and, in view of the circumstances, there being no wrongful intention on the part of McKesson, that he should not be made liable for the full amount with legal interest. At most he should be charged only with interest at five per cent, and in this respect the judgment should be corrected.

For the reasons stated the judgment of the General Term should be reversed and the judgment of the Special Term modified in the particulars indicated.

Amendments may be drawn and served by the respective counsel in conformity with the suggestions in this opinion and the judgment settled, upon notice, by the judge. Neither party should have costs of appeal to the Supreme Court or to this court as against the other.

All concur.

Judgment accordingly.