WESTCHESTER COUNTY.—HON. OWEN T. COFFIN, SURROGATE.—February, 1887.

## MATTER OF HALL.

*In the matter of the estate of* ABIGAIL HALL, *deceased.*

Whether a Surrogate's court has power, after the lapse of ten years from the entry of a decree judicially settling the account of an administrator, to open the same, upon motion of one of decedent's next of kin, and amend it by adding a clause directing a co-representative, who has never rendered any account, to pay to the applicant a specified sum as his distributive share of the estate—*quære.*

A., one of the next of kin of an intestate, and a distributee of her estate, received letters of administration thereof, in connection with B. as co-administrator, but never received any of the funds except her distributive share, and never rendered an account, although, upon an accounting by B., she was allowed a certain sum by way of commissions. She had entire confidence in B., and in his financial condition, entrusted her own money to him for investment, and remained passive in respect of the administration. In the absence of evidence tending to show knowledge on her part that B. was using the trust funds for his own purposes,—

*Held,* that she could not be made liable for his *devastavit.*

Wilmerding v. McKesson, 103 *N. Y.,* 329—distinguished.

ACCOUNTING proceedings were commenced in this matter in 1873, and ended in 1877, by the entry of a decree. Jane E. Keleman, the administratrix, never rendered any account, nor was she a party to that proceeding, except as a next of kin, and distributee. The schedules of the account were signed by the ad-

ministrator, John W. Mills, only, and he alone made the usual affidavit verifying the correctness of the account. It was, however, stated in the account and also in the decree, in substance, that Jane E. Keleman, never received any of the funds of the estate, but that Mills received the whole. No statement signed by her to that effect was contained in schedule G, or elsewhere in the account; but she was allowed commissions to the extent of $600.

Again, when the accounting proceeding was commenced in October, 1873, it was stated in the petition that Agnes Hall was a minor having no general guardian. The decree stated that the citation was returned with proof of service on her and others, on April 17th, 1874, and that the Surrogate, having ascertained that she had no general guardian, appointed a guardian *ad litem* for her; that the matter was then adjourned from time to time until May 2d, 1877, when the account was filed, and that the guardian *ad litem* then appeared for said minor; that the decree was then entered, which directed the administrator, Mills, to retain her share, and the share of Charles A. Hall and another, *as their general guardian,* and that the administratrix, having received none of the money or property of the estate, was thereby discharged from all other accountability.

In 1880, Charles A. Hall having become of age, applied on petition and an affidavit, showing that Mills had never been appointed his general guardian, to have said decree amended by striking out the provisions in said decree directing said Mills to retain such shares, amounting to upwards of $11,000 each, and

also to have the provisions discharging the administratrix from further accountability stricken out. The motion was resisted by Mrs. Keleman, the administratrix, but was finally granted in February, 1882, no one appearing for her on that day. In June, 1883, she moved to set aside the order granting the motion to amend the decree, but her application was denied, and the decision was, on appeal, affirmed.

During the period between 1880 and 1883, some arrangement was made by which Mills, who had become insolvent, transferred his real estate at White Plains to Clarence Carskaddan, in trust, to sell and apply the proceeds towards the payment of the unpaid distributive shares as fixed by the decree. What amount was thus realized did not appear. The administrator, Mills, had since died.

An application was now made by Agnes (or Mary Agnes) Hall, who had recently reached the age of twenty-one years, for an order further amending the decree on the accounting of 1877, by " adding thereto a clause directing and ordering the administratrix and administrator of said estate to pay over to the petitioner named in said petition her distributive share of said estate, to wit, the sum of $11,188.23, with the interest thereon from May 2d, 1877." On the argument of the motion to further amend, there was presented by the counsel for the administratrix what purported to be a certificate of Stephen Van Dresar, Surrogate of Oneida county, to the effect that, on the 19th day of December, 1873, letters of guardianship of the person and estate of Mary Agnes Hall, of Vienna, in said county, a minor, were issued *by him*

to John W. Mills. This certificate was dated the 18th day of October, 1880. It was shown, on the other hand, that during the year 1873, Joseph S. Avery was Surrogate of Oneida county, and continued in office until January 1st, 1878. A certificate of W. B. Bliss, the present Surrogate of that county, under his seal of office, was presented showing that, upon a search of the files of his office, he found no petition or bond in the matter of the appointment of a general guardian of Mary Agnes Hall, a minor, and that, as appears by the records of the office, no general guardian was ever appointed for said minor.

C. CARSKADDAN, *for the motion.*

JACOB F. MILLER, *opposed.*

THE SURROGATE.—At the time of the entry of the decree on accounting in 1877, or at some time since, it is alleged that Mills, the administrator, became insolvent and unable to pay all of the distributive shares then unpaid, and all the proceedings had since then have had in view the question of the liability of Mrs. Keleman, the administratrix. The amendment of that decree by striking out the provision directing him to hold the shares of the minors, as their general guardian, was made in accordance with the facts as then presented, and, as they now more clearly appear, was entirely correct. But I do not see how it is of any materiality on this motion. The amendment striking out the clause discharging Mrs. Keleman, the administratrix, from further accountability, simply had the effect of leaving open the question as to her liability. The motion now made touches that question directly.

If she is legally liable, then the motion should be granted; if not, it ought to be denied. This is on the assumption that this court has, at this late day, any power in the premises. Conceding that it has, on the authority of Ormiston v. Olcott (84 *N. Y.*, 339), and Croft v. Williams (88 *id.*, 432), it must be denied. The administratrix, it appears, never received any of the funds or property of the estate, as such, but did receive her distributive share only, and she has, in no discoverable manner, contributed to the alleged *devastavit*.

It is claimed, however, that she is liable, within the doctrine of the case of Wilmerding v. McKesson (103 *N. Y.*, 329). It seems fairly to be inferred, from the account filed by the administrator, that he did use the funds of the estate for his own purposes. The account charges Mills with interest thus: "Add interest on moneys while in hands of John W. Mills, administrator, as agreed upon between parties and fixed by the Surrogate, $4,291.73"; and again, "the administrator, Mills, is chargeable with interest upon the balance remaining in his hands after July 20th, 1873, which has been agreed upon and fixed, by the parties appearing, at $4,291.73." Assuming it to be true that he did use the moneys for his own purposes, that fact alone is insufficient to fix a liability upon the administratrix for any consequent loss. In Wilmerding v. McKesson (*supra*) it appeared that the co-executor, McKesson, had knowledge or the means of knowing that the moneys which were paid in to the other executor were used in the business of the firm of which the latter was a member; that he was not mere-

ly passive, that he was active in the matter, advised as to investments, passed his accounts, consulted counsel, united in employing an accountant, etc. While here, the administratrix appears to have been perfectly passive. She had confidence in the administrator, and in his financial position. She entrusted her own funds. to his care to manage, and invest for her, and prior to the accounting there is not a particle of evidence, express or circumstantial, that tends to show that she knew he was in any way using the funds of the estate. If she then learned it for the first, it did not concern her, as she was, by the decree then entered, discharged from liability, and her connection with the estate severed.

Believing the administratrix to be free from any liability for any *devastavit* of her associate, it is deemed unnecessary to discuss any of the other questions raised by her counsel in his brief; and it follows that the motion to amend the decree must be denied.