---

In the Matter of the Petition of MATILDA MYERS for an Allowance out of the Estate of ALFRED G. MYERS, Deceased.

In the Matter of the Petition of LOUISA MYERS for an Allowance out of the Estate of ALFRED G. MYERS, Deceased.

*Liability of a firm, which continues after the death of one of its members to use the securities of such member in its business.*

A testator left his estate in trust to certain trustees, one of whom was his partner in business. Upon the death of the testator a new firm was formed and all the accounts of the old firm were charged to the new firm, which continued to carry on the business theretofore transacted by the firm of which the testator was a partner.

The personal estate of the testator was represented by stocks and securities held and carried for customers by the firm of which he had been a member, which stocks and securities passed into the control of the new firm and were afterwards mainly employed in carrying on the business transacted by it, of dealing in stocks and securities. A large amount of money held by the firm was deposited in a trust company, which paid two per cent interest on the deposit, which deposit, however, was subsidiary to the business of the new firm.

*Held,* that the new firm was properly charged with interest upon such assets of the estate of the testator at the rate of six per cent per annum.

That as all the partners of the new firm were aware of the fact of this use of the trust estate, or if they were not aware of it, were chargeable with the duty of ascertaining the use so being made of it, and neglected to perform their duty, that they were all obligated to pay the interest, and that such obligation was not satisfied by the payment of the two per cent interest received upon the deposit in the trust company.

APPEALS by R. Baring Gould, John A. Rutherford, Richard King and J. Champlin Morris from the decrees of the surrogate of the county of New York, entered in his office January 29, 1889, confirming the report of a referee, and directing them to pay to the attorney of the petitioner in the first above-entitled proceeding the sum of $6,176.31 on account of her share of the income of the estate of Alfred G. Myers, deceased, and the sum of $183 out of the principal of the estate for one-half the referee's and stenographer's fees on the reference ordered on the petition, and answer made to the same; and from a like order directing the executors to pay to John W. Thomson, as committee of the person and estate of Louisa Myers, or to his attorneys, the sum of $6,176.31 on account of the income arising out of the same estate, and the sum of $183 out of the principal of the estate for one-half the referee's and stenographer's fees on the reference ordered on the issues framed by the answer of the executors to her petition.

*Edgar M. Johnson*, for the executors, appellants.

*George M. Thomson*, for the respondent Matilda Myers.

*Foster & Thomson*, for the respondent Louisa Myers.

DANIELS, J.:

These proceedings were commenced at different times, but they were finally heard and decided together. The referee, to whom the issues in them were referred, made one report equally applicable to and disposing of the issues framed by the answers of the executors to each of the petitions. The report was confirmed by two different orders or decrees directing the moneys to be paid for and on account of each of the petitioners. The proceedings have not been strictly regular, neither have the directions contained in section 2545 of the Code of Civil Procedure been complied with. But as no objection has been taken to them in either respect, and the evidence, as well as the facts proved by it, are fully and clearly before the court, the case may still be considered and decided and these appeals determined.

The petitioners are sisters of the deceased testator, who departed this life on the 4th day of March, 1887, unmarried, leaving them and an only brother surviving him. And the orders or decrees from which the appeals have been brought have disposed of the income

of the estate, from the decease of the testator to the 28th day of September, 1888. This was found to be the sum of $19,050, from which the executors had made previous payments to and on behalf of the petitioners, and for the payment of taxes, amounting to the sum of $6,757.19, leaving a present balance of $12,292.31, which was directed to be divided equally between the petitioners.

Proceedings were pending to revoke the probate of the will, but the brother, by whom they were commenced, consented in writing that the income of the personal estate should be paid to his sisters, but without prejudice to those proceedings. Their pendency, therefore, in no way interfered with the success of the petitioners' applications.

They claimed the income of the personal estate as the beneficiaries in a trust directed to be created for them by the testator. His directions as to this trust, as well as the final disposition of the property, were as follows :

"After payment of the specific legacies hereinafter bequeathed, I give and bequeath all my personal property of whatever kind, and also the proceeds of my seat in the Stock Exchange, except as hereinafter disposed of, to Richard King, R. Baring Gould, J. Champlin Morris and John A. Rutherford, in trust to collect, invest and reinvest the same, and pay the income thereof in equal shares to my sisters Matilda Myers and Louisa Myers, and I direct that executors should receive the compensation allowed by law, and that no bond or other security be required of them, or either of them, for the proper performance of their duty. At the death of the last surviving of my sisters I direct that one-half of the principal of my estate be given to my friend and partner, John A. Rutherford, forever, and that the other or remaining half shall be given to William Walton Rutherford forever."

And no question has been made as to their right to the payment of this income, but the executors claimed that they had already paid over all that the beneficiaries were entitled to receive from them. This was contested and denied by the petitioners, and they were sustained by both the referee and the surrogate in the proceedings following the issues in this manner produced. The executors, however, contend that injustice has been suffered by them through the decisions which have been made. In arriving at the result they

have been charged with interest, or income at the rate of six per cent, while they have conceded less than half that rate as the income realized from the personal estate by themselves.

The testator was a member of the firm of Myers, Rutherford & Co., which was composed of himself and the executor, John A. Rutherford, who were engaged in business as brokers and dealers in securities and stocks, and the personal estate of himself was in that firm. Upon the occurrence of his decease a new firm was formed under the name of Myers, Rutherford & Co., in liquidation, in which the executor, John A. Rutherford and his brother, are members. This firm commenced business the next day after the testator's decease, and all the accounts of the old were changed to the new firm, which thereupon went on with the same business. In this manner it acquired the stocks, bonds and other securities of the preceding firm, and continued its dealings in stocks and securities for responsible customers, for whom it carried these securities, and charged them a uniform rate of six per cent for doing that. On the 2d of May, 1887, the personal estate of the testator was appraised at the sum of $180,852.02, and, so far as it consisted of stocks and securities, this passed into the new firm in the manner already mentioned, and was afterwards mainly employed in carrying on that business.

A large amount of money was deposited in a trust company which paid a very low rate of interest on the deposit. But it is quite plain, from the evidence, that the executors cannot be relieved from the liability to pay a greater rate of interest than that which they received from that source, for the deposits were, in fact, subsidiary only to the business of the new firm. The certificates themselves are proof that they were not taken on account of the executors, but were, in fact, the property of the firm up to the time of their assignment, which was not earlier than the commencement of these proceedings, and then was evidently intended to be no more than colorable. These deposits were no more than incidents of the business, and supplied in part the means of carrying it on. And so far as capital was employed, the firm received for that employment this return of six per cent. For that object it had the use and benefit of this personal estate, and that entitled these beneficiaries to that rate of income. It was earned by the estate devoted

to the trust, and where that is the fact the rule generally followed is to charge the trustees so employing it at least with simple interest. (Perry on Trusts [2d ed.] § 471 [4.])

And while the capital was in this way employed under the direct authority of but one of the executors, they are all subject to the obligation of making payment of this rate of interest, for all seem to have been aware of the fact of this use of the trust estate, or if they were not, they were chargeable with the duty of ascertaining what use was being made of it, and neglected the observance of that duty. This liability was considered in *Wilmerding* v. *McKesson* (28 Hun, 184) and (103 N. Y., 329), and an obligation as strict as that was held to be incurred by each of the trustees under such directions as were given to them by the will of this testator.

Nor was it in any degree improper to extend the liability back to the time of the decease of the testator, for it was from that time that his estate had, in this manner, been employed and this rate of interest had been realized. That was the rate obtained by the firm which was dissolved by his decease, and, by carrying the same business immediately into the firm formed the next day, the same rate continued to be chargeable and collectible by it. And as the customers were responsible persons no reason presents itself for doubting that it was, in fact, collected.

This rate of interest was allowed upon the round sum of $180,000, being within $852.08 of the appraised amount of the testator's personal estate. In the appraisement made the sum of $14,000 was the value of his undivided half of a seat in the New York Stock Exchange which had not yielded any income. The sum of $10,503, the appraised value of suspended securities, also went to make up the amount of the appraisement. And so did specific articles of jewelry, silver, plate, horses, vehicles and other articles, producing no income. These articles were appraised at the value of $1,891.

The referee has stated in his report that the seat in the Stock Exchange, and the suspended securities and other items from what has been called the I. R. account, had not been included by him in his valuation of the personal estate. And to reach his valuation, after rejecting them, he must have considered that the remaining part of the estate so far exceeded the appraisement in value as still

to be worth the amount of the appraisement. But, while the evidence of the surviving partner indicated that the personal estate would finally exceed the appraisement, it was not satisfactorily proven that such was its condition when the hearing was had. Certainly not to the extent of equalling these deductions. The presumption is that the appraisement was approximately accurate, and it was the safer course to act upon that as long as the evidence left it indefinite to what extent the valuation would finally be found to go beyond that amount. The evidence before the referee was in that condition. The personal estate may considerably exceed the appraisement in value, or it may still remain nearly at that amount. And, for the present purposes, that should be adopted as the valuation of the personal estate. And that will reduce the amount on which the six per cent should be paid to no more than $154,458.08, instead of $180,000, assumed by the referee and finally sanctioned by the surrogate.

The surrogate has directed the fees of the referee and stenographer to be paid out of the principal of the estate of the decedent. This direction should be so modified as to exclude what has been devoted to the creation of the trust. For that has been made inalienable during the continuance of the two lives for which the trust has been provided. (3 R. S. [5th ed.], 22, § 84.) And this section has been made applicable to a trust created in personal property. (Id., 75, § 2.) And a like rule previously prevailed.

The surviving partner, who was one of the executors, was asked whether he had been carrying securities for any of the other executors, since the death of Mr. Myers. This was objected to as an inquiry into the private business of the executors. The objection was not sustained, and the counsel for this executor excepted. And he answered that the account which was called Harncy, was the account of Mr. Baring Gould, who is an executor of this estate. This was an irrelevant inquiry. But at the same time the exception is unimportant. For the right of the petitioners to the percentage allowed to the extent, or nearly to the extent which has been mentioned, was proved beyond all ground of reasonable controversy, by the evidence obtained from the executors themselves. And they were in no respect injured by this answer, which did not and could not enter into the final decision of the applications.

No other objections appear to merit attention in the determination of the appeals. But the orders or decrees should be modified by reducing the amount on which the six per cent is calculated to the sum of $154,458.08. And the referees and stenographer's fees should be directed to be paid out of that part of the estate, not included in the trust or its income, directed to be maintained for the benefit of the petitioners. And neither party should have costs on these appeals.

Van Brunt, P. J., and Brady, J., concurred.

Orders or decrees modified as directed in opinion, and as modified, affirmed, without costs on these appeals.