WILLIAM P. O'CONNER, as Executor, etc., Respondent, *v.* SILAS D. GIFFORD, as General Assignee, etc., Appellant.

Where an executor has reasonable grounds to believe that legal steps to collect assets will be ineffectual, and he is so advised by his counsel, in the absence of any claim of bad faith, his failure to take them will not render him liable as for a *devastavit*.

The onus is upon the executor to show a fair reason why he did not commence proceedings to collect a debt, or to obtain possession of property which he claims belongs to the estate; and, so, it is only necessary for one claiming a *devastavit* to show, in the first instance, the existence of a debt or claim, and that the executor has taken no steps to collect the debt or enforce the claim.

When, however, he meets the proof as to a debt by showing the absolute insolvency of the debtor, or, as to the claim, by showing that he knows of no proof to establish that the property belongs to the estate, and is advised by his counsel in good faith, and believes he cannot make such proof, he cannot be held liable.

Upon settlement of the accounts of an executor, in proceedings instituted by a creditor, he was charged with the amount of two city coupon bonds which, it appeared, had formerly belonged to his testator. They were in the possession of a niece of the testator at the time of his death; she had been his housekeeper and was the residuary legatee. She claimed that they had been given to her by the testator. The executor, believing the bonds belonged to the estate, stated the facts to his counsel, and was advised by him that he could not recover them or their proceeds. There was no claim that either the executor or his counsel did not act in entire good faith. *Held*, that he was not liable as for a *devastavit* in not taking legal proceedings to recover the bonds; and that the charge against him was improper.

*Schultz* v. *Pulver* (11 Wend. 363); *Stiles* v. *Guy* (16 Sim. 230); 39 Eng. Ch. 229; *Harrington* v. *Keteltas* (92 N. Y. 40) distinguished.

The testator, by his will, bequeathed to his executor $500 to be expended in masses for the repose of his soul; he expended $250 with the assent of the residuary legatee. The executor duly advertised for claims against the estate. The claim of the creditor instituting the proceedings was not presented until more than six months after the conclusion of the advertisement, and over a year and a half after probate of the will, and, until presented, the executor was ignorant of its existence. He had, when said expenditure was made, ample funds in his hands to pay all debts of which he had knowledge. *Held*, that the bequest was void, but that the creditor was estopped by his *laches*, and the executor was entitled to a credit for the sum expended; that after the expiration of the six months of advertisement he had a right to rely upon the assump-

tion that all existing claims had been presented, and, upon consent of the residuary legatee, was justified in making the payment.

*It seems* the mere fact that the executor paid out the money in good faith, as directed by the will, would not have entitled him to a credit therefor.

*It seems* where the invalidity of a trust appears upon the face of the instrument purporting to create it, it is no answer on the part of the trustee to a claim by one entitled to the trust fund that he has paid it out in good faith under the illegal trust. It is his duty, where there is any doubt as to the validity of his title as trustee, to apply to the court for the determination of that question.

*Hawley* v. *James* (16 Wend. 61) distinguished.

(Argued October 17, 1889; decided November 26, 1889.)

APPEAL from order of the General Term of the Supreme Court in the second judicial department, made December 11, 1888, which reversed, so far as appealed from, the decree of the surrogate of the accounts of William P. O'Conner, as executor of the will of John McEvoy, deceased.

The proceedings were instituted by Silas D. Gifford, assignee, etc., as the owner of a judgment against the decedent. The portions of the decree appealed from charged the executor with $2,470, the amount of principal and interest on two bonds of Jersey City bonds, and refused him credit for $250 paid out in compliance with a provision of the will.

By the will the testator, after directing payment of his debts and funeral expenses, gave to his executor $500 to be expended in having masses said for the repose of his soul. He devised and bequeathed the residue of his estate to his niece, Mary Ann Murphy.

In a schedule annexed to the account, as filed by the executor, appeared this statement: "There were two bonds of Jersey of the par value of $1,000 each belonging to the deceased which did not come into my hands. They were taken by the residuary legatee, Mary Ann Murphy, without my knowledge or consent, and sold by her." It appeared that, to the knowledge of the executor, the decedent had these bonds in his possession a short time before his death. The executor sought to obtain possession of them from the residuary legatee, who had the custody of the books and papers of the deceased. She

·claimed that they had been given to her by the decedent, and she subsequently sold them, receiving the proceeds. Upon presentation of the claim against the estate the executor stated the facts, as to the bonds, to his counsel and was advised by him that he " had no case against Mary Ann Murphy in reference to these bonds."

Further facts are stated in the opinion.

*Ralph E. Prime* for appellant.    The bonds were lost through the negligence of the executor, and he is liable as for a devastavit. (*Harrington* v. *Keteltas*, 92 N. Y. 40, 43 ; *Cornwall* v. *Deck*, 8 Hun, 122 ; *Hollister* v. *Burritt*, 14 id. .29 ; *Adair* v. *Brimmer*, 74 id. 539 ; *Shurtz* v. *Pulver*, 11 Wend. 391 ; *Leurs* v. *Bounjes*, 5 Redf. 32.)    The direction ·of the will to pay $250 for masses was void and unlawful. ·(*Holland* v. *Alcock*, 108 N. Y. 312.)

*T. G. Barry* for respondent.    This executor should not be ·charged with money paid out in good faith, pursuant to the ·express direction of his testator, because, five years after the payment, the highest court holds that a somewhat similar ·direction in another will is void. (*Gilman* v. *McArdle*, 17 J. & S. 463, 472, 474 ; *Hawley* v. *James*, 19 Wend. 61, 279 ; *Steward* v. *McMunn*, 5 W. & S. 100 ; *In re Wilson*, .4 Barr. 430 ; *Woods* v. *Axton*, W. N. 207.)    As title to the ·coupon bonds passed by delivery, the executor was justified in declining to enter into a litigation with the residuary legatee concerning the bonds, and it is of very little moment whether he himself believed her story. (*Bedell* v. *Carll*, 35 N. Y. 581 ; *Lewis* v. *Merritt*, 113 id. 386.)    Mr. Gifford's claim not having been presented to the executor within six months from the first publication of the notice to creditors, he is not in a position to object to the failure of the executor to take pro- ·ceedings to recover the bonds.    (2 R. S. 89, § 39 ; Dayton on Sur. 393 ; *Field* v. *Field*, 77 N. Y. 294.)

PECKHAM, J. We think the General Term arrived at the ·correct conclusion in this case.    Upon the undisputed facts

the defendant executor was not guilty of any actionable neglect in not bringing suit to recover the bonds or their proceeds from Miss Murphy, the residuary devisee and legatee. For months after the completion of the advertisement for creditors the defendant was ignorant of the existence of the claim of plaintiff, and the defendant had in his possession enough funds of the estate to pay all of its known debts without seeking to recover the possession of these bonds from Miss Murphy. After the claim of the plaintiff was made known, the defendant was advised by his counsel, to whom he made a statement of the facts, that he had no case against Miss Murphy for the recovery of the bonds or their proceeds. This was probably based upon a consideration of the question of what proof the defendant could make that the bonds were, in fact, the property of his testator at the time of his death. The result of an action would have been quite problematical, as we can see, and we should be loth to hold this executor, considering the facts of the case, liable as for a *devastavit* for not taking legal proceedings and thereby seeking to recover the bonds or their proceeds, notwithstanding his counsel advised him that he could not maintain such action. There is no pretense that the defendant did not act in entire and perfect good faith in the matter, nor can there be any question of the *bona fides* of his counsel. An executor who has acted in good faith, and intended fairly and fully to discharge his duty, will not be charged in this manner, if such intentions have been directed by a reasonable judgment; while if the property of the decedent has been wasted through his carelessness and want of proper attention, he will be liable. This rule was laid down by Mr. Justice NELSON in *Schultz* v. *Pulver* (11 Wend. 363, 366), where the administrator was held liable in a very plain case.

If there is reasonable ground for considering that the legal steps to be taken to collect assets by the executor would have been ineffectual, then the failure of the executor, acting in good faith, to take them does not render him liable as for a *devastavit*. (*Clack* v. *Holland*, 19 Beav. 262, 271.)

It is true in the case in Wendell, above referred to, it is stated that if the debts are not collected within a reasonable time after the issuing of letters, either by personal application or by suit, the executor is responsible for such neglect. But it is seen that the court refers to such debts as could have been thus collected, not to those where a suit would have been unavailing. The onus is upon the executor to show a fair reason why he did not commence proceedings to collect a debt, and it is only necessary, in the first instance, for him who insists upon a *devastavit* to show the existence of a debt, and that the executor has taken no steps to collect it. The presumption is that it could have been collected, as the usual course is for men to pay their debts, and solvency is presumed until the contrary is shown. This is what was decided in *Stiles* v. *Guy* (16 Sim. 230; 39 Eng. Ch. 229), the vice-chancellor remarking that "those who seek to exonerate themselves from a debt due from a third person ought to prove that that person could not have paid the debt. If a debt is due the law presumes, until the contrary is shown, that the debtor can pay it. Insolvency cannot be presumed." The same principle is held in *Harrington* v. *Keteltas* (92 N. Y. 40), where this court held that the executor, hearing of a debt due the estate, was bound to active diligence for its collection, and that he could not wait for a request from the distributees. The existence of the debt being proved, the duty of active diligence was enjoined upon the executor. In that case, and upon the facts therein appearing, the court, per DANFORTH, J., regarded the neglect to prosecute not only as an omission, but as a willful default amounting to positive collusion.

Active vigilance is a relative term, and what it is depends upon the facts appearing in each case. As to where the onus lies in making proof of the facts, there can be but little question. A debt being proved the presumption is that it is collectible, as solvency, and not the contrary, is to be presumed. But when the onus being shifted to the executor, is met by proof on his part of the absolute, irretrievable and hopeless insolvency of the debtor, does any rule of active

vigilance demand the institution of legal proceedings by the executor against such insolvent debtor? Does active diligence require the commencement of an action to obtain possession of property which the executor claims belongs to the estate, although, at the same time, he does not know how he can prove that the property does belong to it, and he is also advised by his counsel, in good faith, that he cannot make such proof and he really believes it? All the facts being in, the question arising for determination is whether the conduct of the executor has been guided by good faith, reasonable judgment and an intention to fairly and fully discharge his duty. If so, it cannot be that he should still be held liable for a *devastavit.* No duty of active vigilance would make it necessary to sue an absolute and hopeless insolvent, nor to commence an action when he was entirely ignorant as to where to find the proof to maintain it.

In this case we cannot see that the executor, under all the facts, was guilty of such a lack of diligence as should charge him with the value of these bonds. The result of a suit was entirely too doubtful to require us to hold the executor liable for not instituting it, especially when in good faith and after it is to be presumed, a full statement of all the facts, his counsel advised him that he had no case, and he believed it and acted accordingly.

Another question arises upon this accounting. The testator, by his will, bequeathed to his executor $500 to be expended by him in having masses said for the repose of the soul of the testator. He has expended but $250 belonging to the estate for that purpose, the other half of the $500 having been contributed by the residuary legatee.

The plaintiff claims that the defendant is liable for the $250 thus paid out by him, upon the ground that the bequest to the executor in trust to pay out moneys for masses was wholly void, and the executor had no right to follow out the instructions of the testator in that behalf.

The bequest, as made in this instrument, was void. It has been so held by this court in the very recent case of *Holland*

v. *Alcock* (108 N. Y. 312). The case was decided subsequent to the payments made by the defendant herein. It is claimed by him that he is not liable to further account for this money, because he paid it as directed by the testator, and in good faith, at a time when it had not been decided that such a bequest was void, and his acts done in good faith in carrying out the requirements of his trust should, until such or a similar trust was declared invalid, be upheld, and he should be indemnified by the decree of the court from all liability therefor. I am not prepared upon this statement to admit that the good faith of the trustee would furnish a defense to the demand of the plaintiff. Property which is given to trustees by a will upon a void trust, or one which cannot be executed, is held by them for those persons to whom the law or the other provisions of the will give property which is undisposed of. (*Ommanney* v. *Butcher*, 1 Turn. & Rus. 260; *Morice* v. *Bishop of Durham*, 9 Ves. 399; 10 id. 521, 535; *Vezey* v. *Jamson*, 1 Sim. & Stu. 69; *Baptist Assn.* v. *Hart*, 4 Wheat. 1, 28; *Hawley* v. *James*, 16 Wend. 61, 134, 180, 267.) Many of these cases were those of bills filed by the next of kin, or heirs-at-law to have the trustees turn the property over to them, because the trust was void.

Upon the accounting of the trustees after the trust had been declared void, it would seem to be rather a startling proposition that they were to be indemnified for all payments made in good faith before such declaration. This doctrine would permit a person named as trustee to execute the trust if it or a similar trust had never been declared to be void, if the trustee acted in good faith. On the contrary, it would seem generally as if a trustee acted, in carrying out the trust, at the peril of being able to maintain its validity when called upon. Trustees are favorites with courts of equity, and for that very reason they can at all times apply to the court to be informed as to their duty, or as to the validity of the trust which they have undertaken to carry out. Having this right, where their title to the funds depends upon the validity of the trust, as

evidenced upon the face of the instrument, it is not too much to say to a trustee under such circumstances, if there be the least possible doubt of the validity of your title, bring the parties who might be interested in that question into court, and there have a judicial determination of its validity, and that determination will be a perfect protection for all your acts. If a trustee in a case involving any doubt chooses to go on and carry out the provisions of the trust, he has but himself to blame in case of disaster.

It is true that in *Hawley* v. *James* the court held the trust to be void, and the decree provided indemnification to the trustees for all acts done and moneys paid by them in good faith prior to the decree. There is no detailed statement as to what those acts were or for what the moneys were paid. Many acts might have been performed and money paid for the benefit of the estate. But the case is no authority on this point, for the indemnity was claimed by the counsel for the trustees and was assented to by all the other interests, and passed by virtue of such consent. (See bottom of page 272 in the report in 16 Wend.)

In *Smith* v. *Dresser* (35 Beav. 378; L. R. [1 Eq. Cas.] 651), the trust deed was void, and the person otherwise entitled to the property brought an action to recover it from the trustee, who asked for a decree permitting him to retain the costs and expenses he had in good faith incurred prior to the commencement of the action. Lord ROMILLY, Master of the Rolls, denied the motion, and said the trustee having been appointed under a trust deed which was invalid, he should have known the fact before he proceeded. That, although on the face of the deed it was alleged that three-fourths of the creditors had consented, such was not the fact, and inquiry would have shown it. That a trustee was entitled to have his costs of executing trusts existing and valid, and which he has undertaken to perform, but if the trusts are invalid he has no trusts to execute, and he is not competent to execute any. And as such trusts were invalid the trustee had no duty to perform and he ought to have paid the money over at once. This is

said of a case where the trust deed was not even void on its face, but because of an extrinsic fact, viz., the failure of the necessary number of creditors to consent to it.

The case of *Elsey* v. *Cox* (26 Beav. 95), is to the same effect. If the trust estate is invalid, the title of the trustee is as trustee for those persons upon whom the law devolves the property in such cases, and it would seem to be no answer to them, when they demanded the property, for the trustees to say they paid it out under the illegal trust, but still in good faith. There are cases, no doubt, where the trustees are protected for acts performed in good faith under an instrument creating the trust, where the instrument is subsequently declared void. Such cases are cited in the opinion in *National Butchers and Drover's Bank* v. *Hubbell* (decided at this term). I have found, however, no case upholding the bald proposition that all acts of a trustee done in good faith are protected by the instrument creating the trust, even though such instrument is entirely void. It is not, however, necessary to decide this case upon any such proposition, and we shall not, therefore, do so. There are other facts existing here which alter the case of the defendant and place him in such a position that the court is enabled to protect him in his payment. The property in question was, like all the rest of the testator's property, bound for the payment of his debts. After their satisfaction it was subject to the testators disposal by will. This money was, by the testator's will, to be disposed of in the purchase of masses, and, the debts being paid, if such bequest were invalid, the only one to complain, if the executor obeyed its requirements, was the residuary legatee. The executor properly and legally advertised for the presentation of all claims against the decedent to him, in order to their satisfaction if there were property enough. The plaintiff's claim was not presented during the running of the six months nor for six months thereafter, and the executor was ignorant of its existence. At the end of the six months the executor was in this situation: All the debts of the estate, that he knew anything about, amounted to no more than he had ample funds in his hands to pay. The

only person, therefore, who could, so far as he knew, raise any objection towards his payment of the money for the purchase of the masses, was the residuary legatee, and he knew that she wanted it done. For six months after the conclusion of the advertisement the plaintiff still neglected not only to prove his debt, but even to present it or allege its existence. No reason is given for such omission and neglect. We think that under such circumstances the plaintiff should be estopped from the prosecution of this claim against the trustee.

The testator died in the spring of 1883, and his will was proved in August of the same year, and it was not until April 1885, that the plaintiff presented his claim or that the defendant was apprised of its existence. A delay in presenting a claim against the estate of a decedent of more than a year and a half after the probate of a will and for six months after the expiration of an advertisement for claims against the estate, wholly unexplained, is, in a case like this, sufficient reason for denying the claim of the plaintiff against the trustee to repay moneys paid out by him in good faith, in accordance with the terms of the will, and with the wishes of the only person who, so far as the trustee knew, or with diligence could ascertain, had any interest in the estate.

After the expiration of the six months of advertisement the defendant had a right to rely upon the assumption that all claims had been presented which existed against the estate. Upon such assumption and upon the consent of the residuary legatee he was justified in paying the money for the masses. The plaintiff should not now be heard in his claim against the trustee to recover from him the amount of such payment, when by his own neglect he rendered such payment possible and seemingly in all things proper and called for.

Upon the ground of the conduct of the plaintiff in omitting to present his claim he should be barred from the prosecution against the trustee. The defendant is within the equity, although not within the letter of the statute (2 R. S. 89, § 39), relative to payments made by an executor etc., as against

one who has neglected to present his claim within six months after the first publication of notice to creditors.

The order of the General Term should be affirmed, with costs to the defendant out of the estate.

All concur except RUGER, Ch. J., not voting.

Order affirmed.