(Surrogate's Court, New York County. February, 1906.)

**1. EXECUTORS AND ADMINISTRATORS—ACCOUNTING—ASSETS.**

An estate owed money to the husband of the executrix for about one-half of the amount of its largest asset, which consisted of a debt of the co-executor and his brother. They gave joint demand notes, signed also by a third party, one payable to the husband of the executrix for the amount due him, and one payable to the estate on account of the share of the brother of testatrix. The notes were delivered to the executrix, as it was doubtful under the will whether one-fourth of the estate vested in the brother at once, or was held in trust for life with remainder to his widow. On the brother's death it was adjudged that his share became the absolute property of his widow and infant son. Pending the settlement of the accounts of the executrix, her coexecutor, who did not join therein, died. *Held*, that the several demand notes were not a discharge of the debt to the estate, but were new promises, and the contract of the parties thereto was for the extension of the principal for a reasonable time, and that the note was an asset of the estate, properly in the hands of the executrix, and where it was not shown to have been uncollectible her account should be charged with one-half the amount thereof, with interest from the death of her brother.

**2. BILLS AND NOTES—CONSIDERATION—EXTENSION OF TIME.**

Where a note was signed by two joint debtors for the purpose of extending a prior debt, such extension was a good consideration as against another joint maker of the note.

In the matter of the estate of Harriet M. Kemp. Accounting by executrix. Decree rendered.

I. and J. Fromme, for the executrix.
Gerard Roberts, for the objectant.

THOMAS, S. The only question litigated between the parties in this accounting proceeding which is not disposed of by their stipulation is as to whether the executrix should be charged with one-half the amount of a promissory note, forming an asset of the estate. The decedent died November 6, 1899, and letters testamentary on her will were issued on January 4, 1900, to her sister, Elizabeth Illensworth, and Frank S. Pownall, the executrix and executor. By the terms of the will her estate was to be divided into four equal parts, one of which was given to Elizabeth Illensworth, her sister, one to her nephew, William P. Illensworth, and one to her niece, Florence C. Illensworth. The remaining share was to be for the benefit of her brother John B. Mee; but the language of the will was such as to create a doubt as to whether this share vested in John B. Mee at once, or was to be held in trust for John B. Mee for life, with remainder to his wife and issue. The largest asset of the estate was an indebtedness due and owing from the executor, Frank S. Pownall, jointly with his brother, Wright D. Pownall, to the testatrix, for money loaned to them, amounting to $26,500 and interest. The largest debt due from the estate was owing to Edward Illensworth, the husband of the executrix, and amounted, on July 2, 1900, with interest to that date, to $12,064. On July 2, 1900,

Frank S. Pownall executed, jointly with his brother, Wright D. Pow-
nall, and Sarah A. Pownall, promissory notes, all dated on that day,
each payable on demand, with interest at 6 per cent. for the aggregate
amount of the principal of their debt to the estate, to wit, $26,500, as
follows: One or more payable to Edward Illensworth for $12,064; one
payable to Elizabeth Illensworth for $3,609; one payable to William P.
Illensworth for $3,609; one payable to Florence C. Button, formerly
Florence C. Illensworth, for $3,609; and one payable to the estate of
Harriet M. Kemp, on account of the share of John B. Mee. These
notes were delivered to each of the payees, except only that for the bene-
fit of John B. Mee. The questions as to the ownership of the share of
John B. Mee were not then determined, and the note representing his
share of the Pownall claim was delivered to the executrix. John B.
Mee died September 2, 1901, leaving, him surviving, his widow, Emma
W. Mee, and an only infant son, Herbert B. Mee. By a decision and
judgment of the Supreme Court made in November, 1902, it was deter-
mined that one-fourth of the residuary estate devised and bequeathed to
or for John B. Mee became upon his death the absolute property of his
widow, Emma W. Mee, and of his son, Herbert B. Mee, in equal shares.
The accounting in this proceeding is made by the executrix, Elizabeth
Illensworth, only. The executor, Frank S. Pownall, did not join in it,
and was not made a party to it, and during its pendency he died.

The proceeding has been conducted with great irregularity. The
account of the executrix made no mention of the transaction of which
the $3,609 note was a part, and a lengthy cross-examination of the ex-
ecutrix before the referee disclosed little more than lack of memory
and of qualifications for the management of affairs. At a subsequent
meeting a statement, obviously prepared for her, was presented as a
part of her testimony, and this was never afterward supplemented by
details which might be helpful. The entire record seems to have been
lost, and a copy was submitted to the referee for decision. The report of
the referee was filed, but was not signed by him, and the reference was
afterward terminated upon notice. The matter now comes before me
upon a stipulation that the copies of testimony, exhibits, etc., be re-
ceived as evidence "for the purpose of determining whether the ex-
ecutrix is liable to the petitioner (to wit, the infant objectant, Herbert
B. Mee) for one-half of the promissory note for $3,609, dated July 2,
1900, made by Frank S. Pownall, Wright D. Pownall, and Sarah A.
Pownall to the estate of Harriet M. Kemp." With this stipulation
briefs are submitted, and I will therefore pass upon the contentions of
the parties as set forth in these briefs and upon the evidence, treating
the objections to the account, which lack something in clearness and
definiteness, as sufficient, when aided by the stipulation, to present the
question of the liability of the executrix.

In the absence of any evidence of an express agreement to that ef-
fect, the transactions between the parties did not operate as a complete
discharge of the debt from Frank S. Pownall and his brother. It
divided that debt into parts, and transferred a part to each of the per-
sons receiving the new obligations. It also obligated the parties to
observe the conditions of payment prescribed by the notes given to and

taken by them. On the payment of any one of the notes, the portion of the original debt represented by it was canceled. These new notes were not without consideration or void. So far as they were made by the persons obligated for the original debt, they were new promises to pay a conceded obligation. The executrix testified that the debt was that of Frank S. Pownall and his brother, Wright D. Pownall, who were partners in business; and, accepting this as true, the notes were certainly valid as to them. As to Sarah A. Pownall, and also as to Wright P. Pownall, if the contention of fact of the counsel for the executrix is accepted that he was not bound by the original debt, the notes were supported by a sufficient consideration; for the giving and acceptance of them, followed by subsequent forbearance, effected or proved an implied extension of the time of payment of the debt due from the original and principal obligor, and made a division of the debt into parts, which he had no legal right to claim. The original debt was then due and payable, without demand or other condition. The substituted notes were made payable on demand, with interest, payable monthly. This provision for the payment of interest, and the fact that extensions as to payment were actually given, require the inference that the contract of the parties was that the demand for payment of the principal was not to be made immediately, and that payment of principal was extended for a "reasonable time," though such extension was not definitely stipulated for. This extension was a sufficient consideration to hold those makers of the note, who were sureties for the principal debtor. Finch v. Skilton, 79 Hun, 531, 29 N. Y. Supp. 925; Traders' Nat. Bank v. Parker, 130 N. Y. 415, 29 N. E. 1094; Mutual Life Ins. Co. v. Smith, 23 Hun, 535.

The note for $3,609, payable to the estate of Harriet M. Kemp on account of the share of John B. Mee, was properly delivered to the executrix. It was an asset of the estate, and as such it might have been in the charge of either executor; but the properties of the situation were observed when, by consent of the executor, who was one of the obligors, it was placed in the custody of the executrix. When this was done, the executrix stood toward the new security in a very different situation from what she would have done if the debt was that of the coexecutor only. This asset having been placed in her custody and control, she became obligated to the parties having interests in it to be diligent as to its collection. If she has failed in this duty, and the amount has been lost by her negligence, she is liable therefor. Schultz v. Pulver, 11 Wend. (N. Y.) 363; Harrington v. Keteltas, 92 N. Y. 40.

It is her counsel's contention that the makers of the note were insolvent, and that it was not collectible. If this is true, her defense is meritorious; but solvency is presumed, and the burden of establishing the absolute and hopeless insolvency of each and every of the obligors rested upon her. Matter of Hosford, 27 App. Div. 427, 50 N. Y. Supp. 550; O'Connor v. Gifford, 117 N. Y. 275, 22 N. E. 1036. I have searched the record in vain for any evidence upon which a finding could be based of the insolvency of the obligors, or either of them. On the contrary, I find evidence inconsistent with this insolvency. Quite shortly after the notes were made, the one given to the son of the

executrix was paid in full. The husband of the executrix received more than $6,000 and interest on the note or notes given to him prior to December, 1903, and, at that time was entirely content to rest on a note given him by Frank S. Pownall and Wright D. Pownall for a balance of $6,000 and interest, and to waive a claim against the estate, which, upon the theory of the counsel for the executrix, he then had therefor. The executrix herself received interest promptly and monthly upon the note given to her individually up to the time of the close of her examination before the referee.

It is also argued that legal difficulties prevented the collection of the note, and that the executrix could not maintain an action at law against her coexecutor. She had a remedy against her coexecutor in equity, if not at law. Rogers v. Rogers, 75 Hun, 133, 27 N. Y. Supp. 276; McGregor v. McGregor, 35 N. Y. 218. She certainly had a legal remedy against two of the makers of the note, and she made no attempt to assert any remedy at all.

In addition to all these legal considerations, I find much in the record that suggests willful connivance and lack of good faith on the part of the executrix. The executrix and her husband and her two children received their notes on July 2, 1900. It is not suggested that any of these notes were worthless or unsatisfactory, and, so far as we have any evidence on the subject, they were all paid as promptly as the payees desired. The account, as filed by the executrix, though purporting to be full and complete, makes no mention of the note in controversy, and it was not until after a most vexatious and troublesome cross-examination of the executrix that such information as we now have of the transaction was furnished. Candor and fair dealing required that John B. Mee and his wife and the guardian of his child should have been fully informed of these facts with promptness. If any real legal difficulty existed in the enforcement of payment by the executrix, no such difficulty would have existed if the note had been indorsed by her and delivered to the persons entitled. The other persons entitled to their notes received them promptly, and at the death of John B. Mee, on September 2, 1901, or on the making of the Supreme Court judgment in November, 1902, there was no legal reason why the note in question could not have been delivered to the parties entitled to it. If any practical difficulty existed because of the actual or threatened insolvency of the makers of the note, the parties in interest might at least have been consulted, and invited to take action in their own behalf, or to advise if it was thought that the executrix should act for them.

The executrix will be charged with one-half of the note for $3,609, with interest at 6 per cent. from September 2, 1901, payable to the guardian of the infant objectant, together with costs. Tax costs and settle decision and decree on notice.

Decreed accordingly.