HELEN M. RODGERS, Respondent, *v.* JOHN C. RODGERS, Appellant.

First Department, January 10, 1919.

**Husband and wife — contract by husband and his father for payment of regular income to wife in consideration of her discontinuance of action for divorce — public policy — consideration — construction of contract — father of husband not primarily liable — complaint — failure to allege non-payment by husband during lifetime and insolvency of his estate — presumptions.**

A contract under seal between a wife and her husband and his father under which in consideration of the discontinuance by the wife of an action for divorce and of her promise to again live and cohabit with her husband, he and his father agree that she shall receive a regular income during the balance of her life, is not contrary to public policy and is founded upon a legal consideration.

The fact that in the agreement it was merely agreed between the three parties that the wife " shall be paid " a stipulated income taken together with the rule of law placing upon the husband the obligation to support and maintain his wife during his lifetime, leads to the inference that the primary obligation to provide the wife with a regular income was placed upon her husband and that the father-in-law's obligation was to see to it that the income was paid in the event that the husband failed to pay,

and in the event that his estate was insufficient to provide the stipulated payments after his death.

Hence, a complaint in an action by the wife against her husband's father, instituted after her husband's death and more than eight years after the agreement to recover for monthly installments running as far back as the year of the execution of the contract, which merely alleges that the *defendant* has failed to pay the plaintiff " the moneys provided in said agreement to be paid by the defendant," is insufficient, for its failure to allege non-payment by the husband during his lifetime and the insolvency of his estate.

It is to be presumed that the plaintiff's husband died intestate and also solvent.

MERRELL, J., and CLARKE, P. J., dissented in part, with opinion.

APPEAL by the defendant, John C. Rodgers, from an order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New York on the 30th day of March, 1918, overruling his demurrer to the complaint.

*Thomas F. Conway* of counsel [*Thomas E. O'Brien* with him on the brief], for the appellant.

*Philip J. Britt*, for the respondent.

SHEARN, J.:

I agree that the contract is not contrary to public policy and that it is founded upon a legal consideration. As I view the contract, however, the intention was that the primary obligation to provide the plaintiff with a regular income of $3,600 a year should be cast upon the plaintiff's husband, whose duty it was during his lifetime to support and maintain the plaintiff, and after his death upon his estate, and that the defendant should be liable as surety in the event of non-payment by his son during his lifetime, and after the son's death in the event that the son's estate was insufficient to provide the stipulated income. The situation is peculiar in several respects. In the first place, although one of the main inducements to the contract on the part of the plaintiff was that she should be assured of a regular and stipulated income, this suit was not instituted by the plaintiff until after her husband's death and more that eight years after the agreement was made; yet recovery is sought for monthly install-

ments running as far back as August 1, 1909, crediting scattering payments made by the defendant amounting in all only to the sum of $1,900. This creates no presumption that the husband substantially provided the stipulated income during all these years, but it is very suggestive. In the next place, the complaint studiously avoids any allegation that the plaintiff did not receive the stipulated income from her husband during the eight years following the agreement, and merely alleges that the *defendant* has failed to pay the plaintiff " the moneys provided in said agreement to be paid her by the defendant." Finally, the agreement itself is peculiar in that the only direct promise of the defendant to pay any sum of money as a primary obligor is found in paragraph 6 of the agreement, referring to attorney's fees, whereas in the vital clause of the agreement, covering the matter of the plaintiff's income for life, the agreement merely provides: " It is hereby agreed that the party of the second part [the plaintiff] * * * *shall be paid* on the first of each and every month the sum of three hundred dollars." The agreement was evidently carefully drawn by a lawyer, and it is only natural to attach some significance to the striking difference in the phraseology employed in fixing the defendant's obligations in the 5th paragraph as contrasted with the 6th. In the latter paragraph the defendant and his son directly bound themselves to pay the attorney's fees; in the former it was merely agreed between the three parties to the instrument that the plaintiff " shall be paid " a stipulated income. This, together with the fact that the law placed upon the husband the obligation to support and maintain his wife during his lifetime, leads to the inference that the defendant's obligation was to see to it that the income was paid in the event that the husband failed to pay, and in the event that the husband's estate was insufficient, to provide the stipulated income after the husband's death. The learned counsel for the plaintiff justifies his failure to allege non-payment on the part of the husband by insisting that the obligation of the defendant was several and that he was bound as a principal to pay the stipulated income. If this were so, then the plaintiff would be entitled to recover of the defendant, regardless of the income she had received from her husband. This con-

struction is so plainly unreasonable that the plaintiff's counsel is driven to urging that payment by the husband is a matter of defense for this defendant. But if the defendant were primarily and severally obligated to pay the plaintiff $3,600 a year, it would be no defense for him to allege that some one else had paid the plaintiff $3,600 a year. The unreasonableness of the situation lends force to the conclusion that the intention was that the defendant should pay only in the event that the plaintiff failed to receive the income from her husband during his lifetime, and from his estate after his death. It seems to me that such, too, is a logical conclusion to be drawn from the dissenting opinion, which holds that, so far as the installments accruing during the lifetime of the husband are concerned, the complaint is bad for failure to allege non-payment by the husband. This requirement to allege non-payment by the husband must rest upon the assumption that the defendant is only liable in the event of his son's failure to pay, an obligation which is in the nature of suretyship. Neither does it seem to me to be quite logical to require the plaintiff to allege non-payment by the husband, in order to make a good complaint for failure to pay installments during the husband's lifetime, and at the same time omit this requirement with respect to payments from the estate on account of installments accruing after the death of plaintiff's husband. The situation with respect to the estate further emphasizes the unreasonableness of holding that the defendant is liable primarily and not as surety. There is no allegation that the estate is insolvent or unable fully to discharge the contract obligations of plaintiff's husband. It is to be presumed that the plaintiff's husband died intestate (*Barson* v. *Mulligan,* 191 N. Y. 306, 324); also that plaintiff's husband died solvent. (*O'Conner* v. *Gifford,* 117 N. Y. 275, 279.) The plaintiff is entitled to a substantial share of her husband's estate. If it should amount to a sum sufficient to pay the whole or a substantial part of the stipulated yearly income after her husband's death, it would be most unreasonable to hold the defendant therefor. In such event, the plaintiff would be paid twice, for she would take her share of her husband's estate free from the debt created by this contract, and at the same time collect from the defendant.

All of these considerations lead me to the conclusion that the intention of the agreement was that the defendant should be liable not primarily but as surety, and that the complaint is insufficient for its failure to allege non-payment by the husband during his lifetime and the insolvency of his estate.

The order should be reversed, with ten dollars costs and disbursements, and the demurrer to the complaint sustained, with ten dollars costs, with leave to serve an amended complaint within twenty days on payment of costs.

LAUGHLIN and SMITH, JJ., concurred; CLARKE, P. J., and MERRELL, J., dissented.

MERRELL, J. (dissenting):

This is an appeal from an order overruling defendant's demurrer to the complaint upon the ground that there is a defect of parties defendant, and also that the complaint does not state facts sufficient to constitute a cause of action.

The action is brought by the plaintiff to recover of the defendant the sum of $29,600, plus $7,576 interest, balance claimed by plaintiff her due upon a three-party contract entered into April 7, 1909, between James M. Rodgers, plaintiff's husband (now deceased), the plaintiff, and the defendant, John C. Rodgers. Plaintiff's husband died February 6, 1917. Prior to the making of the contract, for an alleged breach of which plaintiff seeks to recover herein, an action was pending between plaintiff and her said husband for an absolute divorce by reason of the misconduct of plaintiff's husband. On April 7, 1909, in consideration of the discontinuance of such action and of plaintiff's agreement to again live and cohabit with her husband, the defendant in this action and the said husband entered into a written agreement with the plaintiff, a copy of which is annexed to the complaint. This agreement recited the relationship of the parties, and that unhappy difficulties had arisen between them, and as to the pendency of the action for absolute divorce; and that the husband and the father-in-law, the defendant herein, were desirous of obtaining a discontinuance of the action which plaintiff had brought for a divorce, and

First Department, January, 1919.          [Vol. 186.

of inducing plaintiff to again cohabit with her said husband and to start their married life anew, and that the party of the first part had made a detailed affidavit, verified on April 1, 1909, denying all charges of infidelity against him and promising at all times in the future to be a faithful, kind, true and devoted husband; and wherein it was further recited that it was desired by all parties to the agreement that the plaintiff herein should be assured a regular income during the balance of her life. In consideration of such premises and the promises and agreements therein contained, it was agreed by the plaintiff herein and in that action that she would discontinue the action for a divorce and that she would again cohabit with her said husband, so long as he and the defendant herein should faithfully carry out and perform the said contract, and so long as the said husband should fulfill the promises contained in said affidavit and conduct himself as a true, kind, faithful, devoted and loving husband. It was further agreed that at an early date the plaintiff and her said husband should take a three months' trip abroad. It was further therein agreed that the household effects on the premises theretofore occupied as a residence by the plaintiff and her said husband and all ornaments, books, pictures, silver, furniture, bric-a-brac and furnishings and all property in their said home, except the personal wearing apparel of her husband, should be the property of this plaintiff. It was further therein stipulated and agreed that if this plaintiff should at any time thereafter consider that she had a cause of action against her said husband for a separation or an absolute divorce, she might bring such action, and in which event she should have the sole care, custody and control of any child or issue of said marriage, plaintiff to be the sole judge as to whether she had such cause of action against her said husband. It was further agreed in and by said instrument, executed by the said plaintiff with her said husband and father-in-law, that so long as plaintiff should live, either with her said husband or separate from him, and irrespective of whether she should bring an action against her said husband for an absolute divorce or a separation, plaintiff would be paid on the first of each month the sum of $300, dating from April 1, 1909, and it was expressly understood and agreed that such

payments should not be affected by the death of either plaintiff's husband or his said father, but should continue so long as plaintiff should live; and that in the event of the bringing of an action by either the plaintiff or her husband against the other for a separation or divorce, the said sum of $300 should be considered as alimony, without prejudice, however, to the plaintiff's applying to the court for an increase thereof. It was further agreed that plaintiff's husband and his said father should pay to the attorney for plaintiff in her divorce action said attorney's fees for all proceedings therein and negotiations resulting in and the execution and delivery of the said agreement executed by the parties. The aforesaid affidavit made by plaintiff's husband was made a part of said agreement, and was therein reaffirmed by said husband. It was further stated in the written agreement that the same should bind the respective parties thereto and the respective heirs at law, next of kin, legatees, devisees and legal representatives of plaintiff's said husband and of his father, the defendant in this action.

In her complaint, the plaintiff alleges that, pursuant to said agreement thus entered into, she discontinued her action for an absolute divorce and resumed her married life with her said husband and continued to live with him until his death, which occurred on February 6, 1917, and that she has duly performed all the conditions on her part under the terms of said agreement. Plaintiff further alleges that the defendant has failed, neglected and refused to comply with the terms of the agreement aforesaid in that he has failed to make said monthly payments of $300, none of which payments have been made by defendant to the plaintiff, as she alleges, except the sum of $1,900 paid to plaintiff by said defendant at various times between the time of the execution of said contract and the 1st day of March, 1915, and that there is now due and owing from the defendant to the plaintiff the balance of said monthly payments, amounting to $29,600, besides interest, amounting altogether to the sum of $37,176.

As before stated, defendant has demurred to plaintiff's complaint upon the ground that there is a defect of parties defendant, and on the further ground that the complaint does not state facts sufficient to constitute a cause of action.

It is the contention of the appellant that the contract upon which plaintiff seeks to recover herein was void as being against public policy. I can see no force to this position. The plaintiff had brought an action and, presumably, at least, she believed that she had grounds upon which to ask a dissolution of her marriage. Her husband and her father-in-law were interested in avoiding such a proceeding and its consequences, and entered into the agreement whereby the husband promised to mend his ways and to thereafter live and cohabit with the plaintiff in a proper and becoming manner and in accord with his marriage vows. All of the parties appreciated the desirability of plaintiff's having a separate settlement and income aside from the support to be furnished by the husband, and it was, therefore, agreed, in consideration of the relinquishment by plaintiff of her cause of action by reason of her husband's misconduct, that the husband and his father should pay to the plaintiff monthly the sum of $300. While this was a joint agreement, and, if plaintiff had sought to enforce it during the lifetime of her husband, undoubtedly the latter would have been a necessary party, the husband having died, the surviving joint obligor becomes liable, subject to a motion, if desired, to bring in the husband's personal representatives as parties defendant. It would seem to me that such a contract should be entirely in accord with public policy, and that it was a most desirable thing to reunite this husband and wife in furtherance of their marital vows. If it should transpire that the husband left an estate, and it should be established that plaintiff had not been paid the moneys provided by the contract, a contribution from the husband's estate could be compelled by the defendant for one-half of what he is required to pay under the terms of the contract. The agreement itself was under seal, and that fact imports a consideration as to all of the parties executing it. The defendant was deeply interested in the welfare of his son and his well-being. He was likewise personally interested in the well-being of his grandchildren, and that they should be reared by a father and mother living in harmony. I think there was ample consideration so far as the defendant was concerned. I think we can almost infer from the relationship of the parties and that the covenants of the defendant alone

lent substance to the contract, and that without defendant's obligation, plaintiff would have been in no position to have received any substantial benefit from the contract. Presumably she would not have made the contract except for the fact that it was executed by the defendant, and that he stood back of his son as an assurance that the moneys provided by the contract would be paid to plaintiff.

But the question presented on this appeal is as to whether or not the allegations of plaintiff's complaint were sufficient to constitute a cause of action against the defendant. The contract upon which plaintiff seeks to recover herein was the agreement of the defendant and plaintiff's husband to pay to her the sum of $300 per month, so long as she should live. This was a joint undertaking of defendant and plaintiff's husband, for the performance of which they were jointly obligated. Either of the obligors might make the monthly payment to plaintiff, or it might be made by them jointly, and payment by either would, *pro tanto*, discharge his joint obligor. In case of default during the lifetime of plaintiff's husband, she could not have proceeded to enforce the agreement against either obligor individually, but would have been required to proceed against them jointly. But, as above stated, the husband having died, plaintiff was at liberty to pursue the survivor. Plaintiff's complaint, wherein she seeks to hold the defendant personally liable for the failure to pay her her monthly allowances, is silent as to any payment having been made by her husband during his lifetime, the allegation of the complaint being merely that the *defendant* has failed, neglected and refused to comply with the terms of the agreement, by failing to pay plaintiff the moneys therein provided, and that there is now due and owing from defendant to plaintiff the balance of $29,600, for which, with added interest, plaintiff asks judgment. There is no averment in the complaint that, during his lifetime and when he was jointly liable with the defendant, plaintiff's husband failed or refused to pay her the moneys provided by the agreement. In this respect we think plaintiff's complaint is defective, and, in the absence of an allegation that the moneys for which she is claiming were not paid by her husband during his lifetime, we do not think the complaint is sufficient to authorize a recovery against the defendant for install-

ments due prior to the husband's death. However, we think the complaint did state facts sufficient to constitute a cause of action against the defendant for the monthly installments due plaintiff under the agreement from the date of her husband's death, which occurred on February 6, 1917, to the time of the commencement of this action, and to that extent the complaint was good and defendant's demurrer thereto was properly overruled.

The order appealed from should be affirmed, with ten dollars costs and disbursements, with leave to the defendant to withdraw the demurrer and to answer upon payment of said costs and ten dollars costs awarded upon the motion at Special Term.

CLARKE, P. J., concurred.

Order reversed, with ten dollars costs and disbursements, and demurrer sustained, with ten dollars costs, with leave to plaintiff to serve amended complaint on payment of said costs.