In the Matter of the Estate of CATHERINE SMITH, Deceased.

Surrogate's Court, Oneida County, July 31, 1933.

*Fuller, Brown & Hubbard,* for the executrix, Mary E. Williams Moore.

*Hart, Senior & Nichols,* for the Canada Trust Company.

*M. J. Margaret Brahe,* special guardian for infants.

EVANS, S.   This is a proceeding for a judicial settlement.   Objections to the account of the executrix have been filed by certain legatees.   It is sought to surcharge the account for loss by theft of certain bonds, also for unusual legal service and expense incurred in the recovery of some of the bonds.

The executrix is a married woman fifty-nine years of age.   When a child she attended a school that was taught by the testatrix.   The friendship thus originated lasted until the death of the testatrix on October 15, 1931.   Her last will and testament was admitted to probate on January 29, 1932.   Mrs. Moore was named as executrix and duly qualified.   The estate consisted for the most part of securities in a safety deposit box of a local bank.   The contents of the box were inventoried at a little in excess of $61,000.   The executrix employed as her attorney Leon L. Arthur, of Utica.   He had prepared the will and codicil, being an attesting witness to both documents.   The executrix and her attorney on several occasions opened the box and together clipped the bond coupons.   The box

was opened on one occasion to obtain a deed or an abstract of title. The executrix at all times retained possession of the customer's key to the box and the attorney alone at no time had access to the box.

Among the securities were twenty-seven $1,000 and one $500 three and one-half per cent United States Liberty Loan bonds.

On January 10, 1933, the executrix desired to obtain from the box a paper that showed the date of birth of the testatrix. This information was sought for the purpose of an inscription to be cut on the monument where testatrix is buried. The executrix went alone to the box and then discovered the absence of the Liberty bonds. She promptly reported the loss and took active measures to apprehend Arthur, who had fled to California. He was arrested there and returned to Utica. He entered a plea of guilty to an indictment charging grand larceny and was sentenced to Auburn Prison. He has since been disbarred. The value of the stolen bonds was $27,500. Of this amount Arthur returned in bonds and cash $12,599.03. There is no fact in dispute and the question to be determined is whether the executrix has been guilty of negligence in the performance of her duties so as to render her personally liable for the loss.

Arthur had practiced his profession in Utica for more than twenty-five years. At one time he held the office of justice of the peace. He was the head of a fine family and active in church affairs. Leading attorneys of the city testified to the excellence of his professional standing. He had transacted business for the husband of the executrix and had been the personal attorney of the testatrix. His selection by the executrix seems to have been natural and reasonable. This leads to consideration of the relation of attorney and client. It is highly confidential and is so regarded as a matter of law. Communications by a client to his attorney are safe from disclosure and may not be given in evidence. (Civ. Prac. Act, § 353.)

Rigid rules govern the admission of an applicant to the legal profession. He must satisfy the test of learning, fitness and character. His license to practice law is a certificate from high authority that he is competent and entitled to be trusted. It is his badge of integrity. Clients have the right to assume that their business will be transacted honestly and efficiently. This faith is the very foundation of the legal profession. The soundness of this view is attested by the rarity of the betrayal of that faith. The measure of liability by an accounting party in this court is as follows: " No profit shall be made by an executor, administrator, guardian or testamentary trustee by the increase, nor shall he sustain any loss by the decrease or loss without his fault of any part of the estate

or fund; but he shall account for such increase, and be allowed for such decrease or loss on the settlement of his accounts." (Surr. Ct. Act, § 265.)

All of the securities in the box were inventoried by a representative of the State Tax Department in the usual course of administration before the executrix assumed possession. She made no further inventory of the contents of the box. There is no evidence as to whether the bonds were stolen at one time or whether they were taken in installments. The bonds were small in size and loosely mixed with the other securities and easily concealed. While it may be argued that the executrix herself should have clipped the coupons and that there was no necessity to have the attorney accompany her, still it is doing violence to the traditions of an honorable profession to imply that a client should adopt protective measures to prevent robbery by his attorney. The Court of Appeals has announced this rule: " An executor is not a guarantor of the safety of securities in his charge belonging to the estate; he is bound simply to exercise such prudence and diligence in the care and management of the estate as men of discretion and intelligence in general employ in their own like affairs." (McCabe v. Fowler, 84 N. Y. 314; Wilmerding v. McKesson, 103 id. 329.

However, when a representative of an estate delegates his official duties to an attorney he may be chargeable personally with loss. (Gaver v. Early, 191 Cal. 123; 215 Pac. 394.)

Cases of delegated authority by representatives of estates are to be distinguished from the case at bar. The securities were surrounded by probably the best protection that has been devised. They were not surrendered to the attorney or to any other person. They had been inventoried under official authority and left intact in the box. The executrix retained the key and it was never out of her possession. Under the circumstances I think that the average person would not consider it necessary to make repeated counts of the bonds. We must judge her conduct according to accepted standards and not in the light of an unusual and unprecedented occurrence. Evidence was received of a custom at least in that bank of attorneys accompanying clients to the vaults where the boxes are kept. The contestants earnestly insist that this constituted error. In the last analysis custom is the basis of law and where they conflict custom sometimes proves stronger. Witness the recent repeal of laws to prohibit beer drinking. Here we have no reported case of an attorney stealing bonds while assisting his client to cut coupons. We must search for new landmarks. What is the standard of human conduct in such a condition? Is the attorney to be admitted or excluded from the vaults? The answer,

I think, is found in what people generally do under like circumstances. Negligence is gauged according to the acts of ordinarily prudent persons. Where negligence is alleged to have grown out of an unusual and novel situation it is obvious that new standards of conduct pertaining to it should, if possible, be discovered.

According to the evidence I find that there was no negligence on the part of the executrix in the selection of her attorney. She was justified in her belief that he was to be trusted. There was no reckless disregard on her part of the duties of her office in permitting him to accompany her and to assist in cutting coupons. The expenditures for legal and other service in recovering nearly one-half of the stolen property were necessary and reasonable.

The occurrence is regrettable but I can find no legal justification for surcharging the account with the loss, and the objections are, therefore, dismissed.

I find that this contest was instituted in good faith and that the contestants and special guardian are entitled to a reasonable allowance payable from the estate.

Decreed accordingly.