In the Matter of the Accounting of RHEA SITTENFIELD et al., as Executors of ABRAHAM S. ROSENTHAL, Deceased.

RHEA SITTENFIELD et al., Individually and as Executors of ABRAHAM S. ROSENTHAL, Deceased, Appellants; SAMUEL LEVY, Special Guardian for LESLIE J. ROTH et al., Respondents; KENNETH J. MULLANE, Special Guardian for Gladys Hack, an Infant.

First Department, April 20, 1945.

*Francis S. Bensel* of counsel (*Albert B. Maginnes* with him on the brief; *Rathbone, Perry, Kelley & Drye,* attorneys), for appellants.

*Morris J. Bricker* of counsel, *Samuel Levy,* special guardian, for Leslie J. Roth and others, infants, respondents.

DORE, J. The executors of Abraham Rosenthal, deceased, appeal from so much of a decree of the Surrogate's Court of New York County as surcharges them individually $17,621.38 damages for negligence in failing to collect the principal of

an alleged obligation of Gladys Stern, decedent's daughter, claimed to be owing to her father and unpaid by her at the time of his death.

Decedent died May 7, 1938, leaving a large estate and appointing as his executors his daughter, Rhea Sittenfield, two grandsons, Stephen A. Tanburn and Alfred S. Meyer, and Central Hanover Bank & Trust Company, hereinafter referred to as "the Bank". Decedent was survived by his daughter, Rhea Sittenfield, and his daughter, Gladys Stern (now Gladys R. Heller but herein referred to as Gladys Stern), as his next of kin, and by his grandsons, the said Tanburn and Meyer.

The executors instituted the proceeding for the voluntary judicial settlement of their account and appeal only from so much of the decree judicially settling the account as sustained objection No. 4 in the report of Samuel Levy, special guardian for an infant great-granddaughter of the decedent who is a contingent remainderman under the will and for certain other infants more remotely related who are possible remaindermen. That special guardian recommended a surcharge of $26,538.22, the balance unpaid on the sum of $30,000 decedent advanced in 1931 to a German firm, on the ground that payment of such obligation had been assumed by Gladys Stern; that the balance in the amount recommended as a surcharge remained unpaid at the date of testator's death; and that the executors had failed to enforce collection.

Kenneth J. Mullane, appointed special guardian for another infant contingent remainderman, filed a report in which he concluded that there was no basis for an objection to the noncollection of the claim against Gladys Stern.

After a trial before the court without a jury the learned Surrogate held the executors liable on the grounds that the reason originally stated in the account for not collecting the claim, viz., that it was unenforcible under section 15 of the Personal Property Law, was no reason for failing to enforce against one who must be presumed to be solvent; that the executors' amended reasons, viz., that the alleged debt was without consideration and if incurred had been forgiven, were inconsistent and not established; that for family reasons individuals interested in the estate did not desire to press the claim against Mrs. Stern and while the reasons were understandable they were not an excuse for the executors' inaction; and that the record established a valid obligation of Gladys Stern who had paid several thousand dollars on account of the obligation during her father's life. Accordingly, he held the

executors liable for negligence in failing to collect the claim, but limited the surcharge for the benefit only of the infant parties represented by the objecting special guardian in the event and to the extent that they should become interested in the residuary estate.

Gladys Stern, in addition to being a legatee and income beneficiary of the trust of one half of the residuary estate under the will, had also been for many years the income beneficiary of three *inter vivos* trusts, two made by decedent as grantor and the third by his wife. The decedent and the Bank were designated as trustees of each of these trusts.

On October 10, 1931, decedent directed the Bank to charge his personal account with $30,000 and remit that sum to Messrs. Stern, Stumpfl & Co. in Cologne, Germany. At that time Gladys Stern was the wife of Dr. Julius Stern, a partner in the firm of Stern, Stumpfl & Co. The remittance was made to that firm in Germany and charged to decedent's account here. Gladys Stern did not receive any of the proceeds.

About two months after the remittance had been made, Gladys Stern, who was then with her father in Cologne, wrote a letter to the Bank on December 5, 1931, stating that according to arrangements entered into she bound herself to redeem the loan of $30,000 made by her father " to the firm of Stern, Stumpfl & Co. of Cologne " by annual payments of $5,000 each to be deducted from the income which she received from her trust fund. Thereafter between January 4th and December 30, 1932, the trustees of the *inter vivos* trust made payments to decedent out of the income payable to Gladys Stern totalling $3,461.78.

Decedent, in the latter part of 1932, advised the Bank that his daughter should receive $12,500 a year from those trusts if the income sufficed, without any deduction pursuant to the letter of December 5, 1931. During his lifetime decedent never changed those directions. Thereafter the income after taxes did not exceed $12,500 and no further payments were made to decedent pursuant to the letter of December 5, 1931, to the date of decedent's death in 1938; and no request or demand for any payment was ever made.

On decedent's books there was entered an advance made October 30, 1931, " to Stern, Stumpfl & Co. to be paid back at rate of $5,000 per annum " and his ledger indicated the payments on account showing a balance of $26,538.22. After the decedent's death all of the individual coexecutors and members of the decedent's family informed the Bank that

decedent had repeatedly stated the money was not owed by Gladys Stern.

The executors after considering and placing before their counsel all of the facts within their knowledge, including the entries in the decedent's books and the statements of the members of decedent's family, were advised by counsel that the claim was not enforcible. On that state of facts and on such advice, they determined not to prosecute the claim.

By the letter of December 5, 1931, Gladys Stern promised to redeem the advance that had been made, not to her but to the firm of Stern, Stumpfl & Co. The learned Surrogate, however, found that the money was lent at her instance. We find no evidence of any oral or written request for the loan made by Gladys Stern at or preceding October 10, 1931, the date of the advance. The entries on decedent's books of account are not conclusive and, as self-serving declarations, do not show that the advance had been made to the German firm at the request of Mrs. Stern. The inferences from the whole record are to the contrary. Decedent was in New York when the loan was made and Mrs. Stern was in Cologne, Germany; there is no proof of any communication passing between them bearing on the subject of the advance at the time it was made, much less proof of any request by Gladys Stern. At the time decedent made the advance, Dr. Stern, his son-in-law, was a named beneficiary of one of the substantial *inter vivos* trusts created by decedent's wife of which decedent was trustee. Under the terms of that trust Dr. Stern was entitled to one half of the entire income on his wife's death. In the light of the manner in which the advance was made it is a reasonable inference that it was not made as an obligation of the daughter. The loan was not made to her but to the firm of Stern, Stumpfl & Co. of Cologne and it does not appear that Gladys Stern received any part of the proceeds. In the absence of proof that the advance at the time it was transmitted was made at Mrs. Stern's request or for her account, and with the intention of holding her legally liable thereon, her letter written almost two months after the transaction was closed was without present consideration and legally unenforcible as unconnected with any prior legal or equitable claim. (*Pershall* v. *Elliott,* 249 N. Y. 183, 188; 1 Williston on Contracts [Rev. ed., 1936], §§ 111, 142.) The letter evincing her promise is dated almost two months after the advance was a completed transaction. That Mrs. Stern did not challenge the account as filed by the executors is not an admission on her part as the executors

made no claim whatever against Mrs. Stern which she was called upon to answer. The record fails to disclose evidence sufficient to establish against Gladys Stern any legally enforcible obligation, based on present sufficient consideration.

We think, too, it is clear beyond doubt that the executors acted in good faith and in the honest belief that they could not successfully maintain an action to enforce the claim. The individual executors are the principal beneficiaries under the will and lost financially from nonenforcement of the claim. Had they sued Gladys Stern, evidence by the members of decedent's family of his repeated statements that Mrs. Stern did not owe anything and that he would not collect anything from her, would be available to her in that action as section 347 of the Civil Practice Act would not apply. Without doubt the executors were entitled to believe that the members of the family would have given such testimony which with the other facts and the law applicable thereto would make successful prosecution extremely doubtful. If they sued and incurred expensive litigation without realizing any assets, a special guardian might seek to surcharge them for expenses incurred in the prosecution of fruitless litigation.

On all the facts disclosed, we hold that these executors are not accountable for their failure to institute suit to collect this disputed claim. In *O'Conner* v. *Gifford* (117 N. Y. 275, 278) the court, holding that an executor was not liable for a devastavit in not taking legal proceedings to recover bonds, said: " The result of an action would have been quite problematical, as we can see, and we should be loth to hold this executor, considering the facts of the case, liable as for a *devastavit* for not taking legal proceedings and thereby seeking to recover the bonds or their proceeds, notwithstanding his counsel advised him that he could not maintain such action. There is no pretense that the defendant did not act in entire and perfect good faith in the matter, nor can there be any question of the *bona fides* of his counsel."

In *Matter of Fantl* (249 App. Div. 392) this court said: " An administratrix or executrix is not a guarantor of the collection of a testator's outstanding claims, nor is such representative liable for error of judgment with regard to such collections if honestly made in good faith and in the exercise of reasonable care. Acting in good faith, with reasonable judgment, and sound discretion, the representative may determine that the enforcement of claims by litigation is unwise."

The decree so far as appealed from should be reversed and objection No. 4 of the special guardian, Samuel Levy, should be dismissed, with costs and disbursements to the appellants payable out of the estate.

MARTIN, P. J., UNTERMYER, COHN and CALLAHAN, JJ., concur.

Decree so far as appealed from unanimously reversed, with costs and disbursements to the appellants payable out of the estate, and the proceeding remitted to the Surrogate of the County of New York for further action in accordance with opinion.