S. Samuel Di Falco, S.
The gross assets of the decedent, who died in January, 1946, are valued at nearly $70,000. The income tax return for the year 1945 and for the first few days of 1946 was filed by the administrator and questioned by the taxing authorities. In March, 1950, the United States assessed additional taxes of $11,558.35 and $407, respectively, together with interest on each obligation. The present account of the administrator was not filed until the account was ordered in a proceeding instituted by the United States. The account shows distributions to the administrator individually and to his two sisters in excess of $30,000. There are other disbursements of funds for which full explanation cannot be made. The account also reveals that the administrator deposited $10,000 in escrow with his former attorney to meet possible tax claims, and that this sum has apparently been lost to the estate. The balance remaining in the administrator’s hands is less than $200.
We shall deal first with the belated attempt to litigate the validity of the Grovernment’s claim. The account sets forth this claim as one presented to the administrator, and it does not list the claim among those “disputed or rejected ” by him. The existing statutory provisions governing the presentation and trial of claims do not explicitly require the fiduciary to take affirmative formal action either to allow or to reject claims presented to him, and they do not explicitly specify the effect of the fiduciary’s failure to do anything at all in respect of such claims. However, sections 210 and 211 of the Surrogate’s Court Act are built upon the assumption that the fiduciary will take action on every claim that is presented to him, and they appear to give the status of an allowed claim to one that is reported in the account and at that late date is neither disputed nor rejected. The claim of the United States was not disputed or rejected by this administrator either when it was presented to him or ini his account. Moreover, none of the pleadings filed by any of the parties challenged in any way the validity of the claim or its amount, and nothing in the entire record gave the slightest hint to the claimant that the claim was disputed. Under such cir *865 cumstances, the claim as set forth in the account must be regarded as an allowed claim.
In any event, the attempt to litigate the claim after the hearing comes too late. At the hearing, in attempting to prove that notice was given to the administrator of the additional tax assessments, the Government placed in evidence copies of the certificates of assessment. In the brief submitted after the hearing was concluded, the administrator and his surety seek to dispute the claim and to argue that the assessment was barred by the Statute of Limitations. This court is not the court in which such a tax claim can be litigated. Even if it were, the issues now sought to be raised were not duly presented by the pleadings, and in no event can questions of limitation be raised for the first time in the argument after the hearing.
The United States demands that the accounting party be surcharged for having distributed the moneys without reserving sufficient funds to pay the claim in full. The administrator contends that all distributions were made by him in good faith, that he had reserved what his counsel recommended as a reasonable sum to meet possible tax claims, that he had the right to rely upon his attorney’s advice, and that in any event he should not be held liable for the amount which he deposited with his attorney to meet the tax claim.
Section 208 of the Surrogate’s Court Act protects an administrator in making distributions after the seven-month period only when the distribution was made in good faith and without knowledge of further claims. (Matter of Huscher, 251 App. Div. 156; Matter of Goldberg, 14 A D 2d 294.) The testimony of the certified public accountant shows that the administrator was aware of the probability of a deficiency assessment at the time the return was prepared. The administrator’s own testimony establishes his knowledge that a tax assessment would probably be made. His deposit of the sum in escrow is also evidence of his knowledge that the tax paid would possibly be insufficient. It is true that he did not know the precise amount that would be assessed, and that even after assessment he undoubtedly remained in ignorance for some time of the amounts actually assessed. The notices of assessment were sent to him in care of his former attorney (which was presumably the address given to the Government and the one to which it was required to send the notice; Internal Revenue Code, § 6303; U. S. Code, tit. 26, § 6303), and his attorney appears to have concealed from him the receipt of the assessments. The fact is, however, that the administrator began distributing funds within the seven-month period and he continued making distributions while the tax *866 returns were under scrutiny by the Government. All of the payments to the statutory distributees had been completed before the Government made its assessment. The administrator, knowing of a probable claim by the Government, assumed the risk in paying out the funds without assuring himself of the amount of reserve necessary to satisfy the expected claim. He was not justified in accepting, as a basis for final distribution, the estimates of his counsel that the claim would not exceed a particular sum. The accountant testified that before the return was filed, he had advised the administrator that the further assessment might be $20,000 or $25,000, and thus the estimates of possible liability from expert sources were not harmonious. Procedures are open to an administrator to obtain a prompt assessment of tax (Internal Revenue Code, § 6501; H. S. Code, tit. 26, § 6501), although it would appear that under the circumstances of this case his attorney was not anxious to hasten that determination. There are, it is true, circumstances where the good faith of a fiduciary may be established by proof that he followed legal advice given to him by counsel, although even in those cases “ the bona fides of his counsel ” is also a point to be considered. (Matter of Rosenthal, 269 App. Div. 139, 144 and cases cited.) In this case, however, the administrator was pursuing a course of action that could cause damage to a known preferred creditor, and he was acting, not on the basis of pure legal advice, but upon the basis of his attorney’s speculation as to what the disputed claim might ultimately turn out to be worth. That speculation, or estimate, was, as stated above, different from that of the accountant who prepared the return. Even in the absence of the accountant’s estimate, the administrator would not be justified in making distributions without attempting to ascertain from the Government the limit of its claims. Under such circumstances the distributions cannot fairly be said to have been made in good faith and without knowledge of further claims.
The fact that the other partners in the business had insisted upon a reserve of $10,000 affords no basis for the administrator to believe that this was a sufficient sum to meet the estate obligation. There were obviously two vulnerable points in the return filed by the administrator, first, the large cash disbursements made by the partnership without adequate foundation in the records, and secondly, the contention of the administrator that he and his father had orally agreed upon an equal distribution between them of the father’s share of the profits. The partnership was obviously interested in the payment of any tax that would result from the disallowance of the substantial *867 disbursements. There is no proof that the others even knew of the claim of the administrator that he had an oral agreement with his father for splitting the latter’s share of the profits.
There is no merit in the argument that the administrator must be credited with the amount deposited in escrow with his attorney. The United States was not a party to the escrow agreement. Although no proof was offered with respect to the escrow deposit other than the explanation in the account, it would appear that the other partners were endeavoring to protect themselves from further liability. The administrator had actually received the money from the partnership. This is not a fund which he was unable to collect. He had no authority to delegate his responsibilities as an administrator. Even the decision upon which the whole argument of the administrator and surety is based (Matter of Smith, 148 Misc. 585, 587 affd. 246 App. Div. 563) explicitly states that in a case “when a representative of an estate delegates his official duties to an attorney he may be chargeable personally with loss.”
The court holds that the payments to the statutory distributees were made with knowledge that the United .States was asserting a claim for additional taxes. The disbursements were made without reserving a sufficient sum to pay this preferred claim. The administrator will be surcharged with the amount necessary to pay the taxes assessed by the United States, together with the proper interest thereon.
It was stated on the record that all objections to the account have been withdrawn except those filed by the United States. The claim of Richard Z. Steinhaus, as set forth in Schedule O I, has also been withdrawn. The objections of the United States are sustained.